**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 08-3837

———————————

FRANCIS J. PULEO, TRISH C. PULEO,
ON BEHALF OF THEMSELVES AND ALL OTHER
PENNSYLVANIA RESIDENTS SIMILARLY SITUATED,

v.

CHASE BANK USA, N.A,

Francis J. Puleo; Trish C. Puleo,

                                                    Appellants

———————————

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cv-04800)
District Judge: Honorable Lawrence F. Stengel

———————————

Argued February 17, 2010

Before: McKEE, Chief Judge, SLOVITER, SCIRICA,
RENDELL, AMBRO, FUENTES, SMITH, FISHER,
CHAGARES, and JORDAN, Circuit Judges

(Opinion Filed: May 10, 2010)

Mark R. Cuker, Esq.
Michael J. Quirk, Esq. [ARGUED]
Williams, Cuker & Berezofsky
1515 Market Street, Suite 1300
Philadelphia, PA 19102

     Counsel for Appellants

Robert S. Stern, Esq.
Nancy R. Thomas, Esq. [ARGUED]
Morrison & Foerster
555 West Fifth Street, Suite 3500
Los Angeles, CA 90013

Jeffrey S. Saltz, Esq.
1500 John F. Kennedy Boulevard, Suite 1930
Philadelphia, PA 19102

     Counsel for Appellee

———————

OPINION OF THE COURT

———————

FUENTES, Circuit Judge, with whom McKEE, Chief Judge, and SLOVITER, SCIRICA, SMITH, and JORDAN, Circuit Judges, join.

-2-

This case focuses on the proper boundaries between the decision-making responsibilities of courts and arbitrators. Appellants Francis and Trish Puleo ("the Puleos") brought suit challenging retroactive interest-rate increases on the account balances of their Chase Bank credit cards. Although the Chase Bank Cardmember Agreement governing their credit cards contains an Arbitration Agreement expressly barring class actions, the Puleos brought their suit in a representative capacity, arguing that the class action waiver was unconscionable. After Chase moved to compel arbitration, the Puleos urged the District Court to order the parties to arbitrate their class claims, notwithstanding the Arbitration Agreement's ban on class actions, but argued that the question of whether the class action waiver was unconscionable was a question for the arbitrator, not the court. The District Court rejected their arguments, concluding, first, that the Puleos' challenge to the enforceability of the class action waiver was a question of arbitrability for the court to decide, and, second, that the entirety of the Arbitration Agreement was enforceable.

In this appeal, the Puleos challenge only the first of these conclusions. They argue that the District Court never should have addressed the unconscionability of the class action waiver and instead should have left that issue to be decided by an arbitrator. Appellee Chase Bank takes the contrary position, arguing that it was proper for the District Court to assess the unconscionability of the class action ban because the Puleos' unconscionability challenge to the class action waiver presented a question of arbitrability for the court to decide. For the reasons that follow, we hold that the District Court properly exercised its responsibility to decide issues of arbitrability and we thus will affirm.

## I.

### A.

The facts in this case are straightforward and uncontested. The Puleos use credit cards issued by Chase Bank. They argue that Chase Bank improperly increased the interest rates on their account balances, and did so retroactively. Specifically, Francis Puleo claims that in March 2006, Chase retroactively increased his interest rate from 4.99% to 29.99%, causing him to incur $267 in increased finance charges. Trish Puleo claims that in November 2005, Chase retroactively increased her interest rate from 14.74% to 25.99%, causing her to incur $162 in increased finance charges. Trish Puleo also claims that similar increases were imposed in January 2006 and January 2007, causing her to incur increased finance charges of $263 and $341, respectively.

Chase argues that such increases are permitted by the Puleos' Chase Bank Cardmember Agreements, as well as by state and federal law. The lawfulness of the retroactive interest rate increase, however, is not at issue in this appeal. Rather, this appeal focuses on the forum in which the enforceability of the class action waiver will be determined, not the substance of the Puleos' challenge to the retroactive interest rate increases.

### B.

The Chase Bank Cardmember Agreement addresses a wide range of issues relative to the relationship between a bank and its credit card holders. Included in this Cardmember Agreement is a sweeping "Arbitration Agreement" that states in block lettering that "ARBITRATION REPLACES THE RIGHT TO GO TO COURT." (App. 62.) In particular, the Arbitration

Agreement provides:

> Either you or we may, without the other's consent, elect mandatory binding arbitration of any claim, dispute or controversy by either you or us against the other . . . arising from or relating in any way to the Cardmember Agreement . . . . This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondeat superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to the Arbitration Agreement include claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember agreement or any prior Cardmember agreement.

(Id. at 63.) The Arbitration Agreement also expressly bars class actions, whether as part of litigation or arbitration:

> YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT . . . , NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY

ANYONE ELSE, OR BE REPRESENTED IN A
CLASS ACTION OR OTHER
REPRESENTATIVE ACTION.

. . .

Neither you nor we agree to any arbitration on a
class or representative basis, and the arbitrator
shall have no authority to proceed on such basis.
This means that even if a class action lawsuit or
other representative action, such as that in the
form of a private attorney general action, is filed,
any Claim between us related to the issues raised
in such lawsuits will be subject to an individual
arbitration claim if either you or we so elect.

(Id. at 62-63.) Finally, the Arbitration Agreement features a
severability clause, which states that "if any portion of this
Arbitration Agreement is deemed invalid or unenforceable, the
remaining portions shall nevertheless remain in force." (Id. at
63.)

Despite the express ban on class actions, the Puleos
initially brought this case as a putative class action in
Pennsylvania state court on behalf of themselves and other
similarly situated Chase credit card holders in Pennsylvania.[1]

---

[1] We note that the Puleos could not have commenced this
matter as a class arbitration before the American Arbitration
Association ("AAA"). According to a policy announced in July
2005, the AAA does not accept demands for class arbitration
where, as here, "the underlying agreement prohibits class
claims," unless the parties obtain a court order requiring the

Chase removed the case to federal court on grounds of diversity. Once in federal court, Chase filed a "Motion to Compel Arbitration and Dismiss the Action," in which it sought a court order directing the Puleos "to submit their individual disputes to arbitration in accordance with their agreement with Defendant." (Id. at 43.) The Puleos opposed Chase's motion in part. They argued that, instead of enforcing the Arbitration Agreement in accordance with its express terms, the District Court should compel the parties to submit their class claims to arbitration in order for the arbitrator to determine whether or not the class action waiver was unconscionable and, therefore, unenforceable.

The District Court granted Chase's motion in its entirety. In its ruling, the Court compelled arbitration but held that the validity of the class action waiver was a "'gateway dispute'" and a "'question of arbitrability' for a court to decide."[2] (Id. at 3

parties to submit class claims to arbitration. (App. 108.) In other words, in order to pursue this matter as a class arbitration, the Puleos first had to commence the proceedings in court in order to obtain an order mandating the submission of class claims to arbitration.

[2] The District Court also upheld the validity of the class action waiver, relying upon Gay v. CreditInform, 511 F.3d 369, 394-95 (3d Cir. 2007), and rejecting the Puleos' argument that the class ban was unconscionable. The Puleos do not appeal this aspect of the District Court's Opinion. The only question before us, therefore, is who decides whether or not the class action waiver is unconscionable. We do not address the District Court's substantive determination that the class action waiver is

(quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (additional citations omitted).)  The Puleos filed this timely appeal.  After the case had been argued before a panel of the Court, we elected sua sponte to rehear the matter en banc.

## II.

We have jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(3) and 28 U.S.C. § 1291.  We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate.  See Edwards v. HOVENSA, LLC, 497 F.3d 355, 357 (3d Cir. 2007) (citing Lloyd v. HOVENSA, LLC, 369 F.3d 263, 273 (3d Cir. 2004)).

---

not unconscionable.

However, we are mindful of the possible tension between Gay and our subsequent opinion in Homa v. Am. Express Co., 558 F.3d 225 (3d Cir. 2009).  In Gay, we explained that certain Pennsylvania cases finding that class action waivers are unconscionable were preempted by the FAA.  See Gay, 511 F.3d at 395.  In Homa, we explained that Gay's discussion of preemption "appears to be dicta," and held that New Jersey cases concerning the unconscionability of class action waivers were not preempted by the FAA.  See Homa, 558 F.3d at 229-30.  While perhaps dicta itself, it is worth noting our agreement that Gay's discussion of Pennsylvania law was indeed dicta, since our holding in Gay was that Virginia law governed the parties' arbitration agreement.  Gay, 511 F.3d at 390.  In any event, the New Jersey case law at issue in Homa did not evince hostility toward arbitration clauses, which was the concern about Pennsylvania law expressed in Gay.  Compare Homa, 558 F.3d at 230 with Gay, 511 F.3d at 394-95.

## III.

### A.

Congress enacted the Federal Arbitration Act ("FAA") "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Spinetti v. Serv. Corp. Intern., 324 F.3d 212, 218 (3d Cir. 2003) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). The FAA ensures that arbitration agreements "are enforceable to the same extent as other contracts" by establishing "a strong federal policy in favor of the resolution of disputes through arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003) (quotation marks and citations omitted). To this end, the FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and it entitles any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to obtain a "[court] order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; see also Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 275-76 (3d Cir. 2004).

Although the Supreme Court has continuously reinforced the "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), it has at the same time recognized that courts applying the FAA have a limited but important threshold role to play when a litigant moves to compel arbitration. In particular, the Court has held that "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of

arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam, 537 U.S. at 83 (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986)) (alteration in original, internal quotations removed); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44 (1995).

The types of issues that present questions of arbitrability are, as the Supreme Court has explained, limited.  In Howsam, the Court noted that,

> [l]inguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits.  The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope.

537 U.S. at 83.

Specifically, as the Supreme Court discussed in Howsam and elaborated in Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444 (2003), a question of arbitrability arises only in two circumstances—first, when there is a threshold dispute over "whether the parties have a valid arbitration agreement at all," and, second, when the parties are in dispute as to "whether a concededly binding arbitration clause applies to a certain type of controversy." Bazzle, 539 U.S. at 452; see also Howsam, 537 U.S. at 84; Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005); cf. Certain Underwriters at Lloyd's London

-10-

v. Westchester Fire Ins. Co., 489 F.3d 580, 585 (3d Cir. 2007) ("[O]nly when there is a question regarding whether the parties should be arbitrating at all is a question of arbitrability raised for the court to resolve.") (internal quotation marks and citation omitted). Such questions of arbitrability are presumptively committed to the court unless the parties have "clearly and unmistakably" agreed that the arbitrator should decide the issue of arbitrability. AT&T Techs., 475 U.S. at 649; see also First Options, 514 U.S. at 944.

The Supreme Court has contrasted questions of arbitrability with disputes over arbitration procedure, which do not bear upon the validity of an agreement to arbitrate. "[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide," as are "allegation[s] of waiver, delay, or a like defense to arbitrability." Howsam, 537 U.S. at 84 (citations omitted). Likewise, the Supreme Court has made clear that questions of "contract interpretation" aimed at discerning whether a particular procedural mechanism is authorized by a given arbitration agreement are matters for the arbitrator to decide. Bazzle, 539 U.S. at 453; see also PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 407 (2003) (where an arbitration agreement is ambiguous, "the antecedent question of how the ambiguity is to be resolved" is one for the arbitrator); Certain Underwriters, 489 F.3d at 587-88 (whether an arbitration agreement foreclosed consolidated arbitration is a question of contract interpretation for the arbitrator).

Hence, in Howsam, the Court concluded that the parties' dispute over whether the plaintiff had commenced the proceedings within the National Association of Securities

-11-

Dealers' six-year filing period was a matter for the arbitrator, not the court, to decide. 537 U.S. at 83-84. The Court likened the issue to matters like "waiver, delay, or a like defense," which are presumptively for the arbitrator, explaining that the issue was an "aspec[t] of the [controversy] which called the grievance procedures into play." Id. at 85 (citations omitted). And in PacifiCare, where the parties' contracts were ambiguous as to whether an arbitrator would be authorized to award treble damages on the claims that the plaintiffs brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., the Court held that it fell to the arbitrator, not the court, to resolve the contractual ambiguity. 538 U.S. at 407.

In stark contrast with the question of arbitration procedure at issue in Howsam and the question of contractual interpretation discussed in PacifiCare, when a party challenges the validity of an arbitration agreement by contending that one or more of its terms is unconscionable under generally applicable state contract law, a question of arbitrability is presented.[3] See Doctor's Assocs., Inc. v. Casarotto, 517 U.S.

---

[3] Our dissenting colleagues appear to suggest that an unconscionability challenge to "a single provision of an arbitration agreement" does not necessarily raise a question of arbitrability. Dissenting Op. at p. 14 (emphasis in original). As recently as last year, we recognized that an unconscionability challenge to a single provision of an arbitration agreement—also a class action waiver provision—does in fact present a question of arbitrability. See Homa v. Am. Express Co., 558 F.3d 225, 226 (3d Cir. 2009); see also In re Am. Express Merchs.' Litig., 554 F.3d 300 (2d Cir. 2009) (addressing the alleged

681, 687 (1996) ("[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].") (emphasis added); see also Homa v. Am. Express Co., 558 F.3d 225, 226 (3d Cir. 2009) (same); cf. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000) (addressing the burden of "a party [who] seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive").

The Courts of Appeals are unanimous in recognizing that an unconscionability challenge to the provisions of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide.[4] See

---

unconscionability of a single provision).

[4] An attack on the validity of the contract as a whole, as opposed to the arbitration clause in particular, does not present a question of arbitrability. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). In Buckeye, for example, where the plaintiffs alleged that the contract as a whole was illegal on account of its imposition of usurious interest rates, the issue was one for the arbitrator, not the court. As the Supreme Court explained in that case, "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract." Id. at 446. "The flip side of this rule, however, is that when a party specifically challenges the validity of arbitration provisions

-13-

Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010) ("[I]t is clear that questions of contractual validity relating to the unconscionability of [an] arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA.") (citation omitted); Cicle v. Chase Bank USA, 583 F.3d 549, 554 (8th Cir. 2009); Dale v. Comcast Corp., 498 F.3d 1216, 1219 (11th Cir. 2007); Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 975-77 (6th Cir. 2007); Kristian v. Comcast Corp., 446 F.3d 25, 52-53 (1st Cir. 2006); Parilla, 368 F.3d at 276; Spahr v. Secco, 330 F.3d 1266, 1270-71 (10th Cir. 2003); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003); Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002); We Care Hair Dev., Inc. v. Engen, 180 F.3d 838, 842-43 (7th Cir. 1999); Webb v. Investacorp, Inc., 89 F.3d 252, 259 (5th Cir. 1996). The logic underpinning this consensus is readily apparent—an unconscionability challenge to an arbitration agreement presents a question of arbitrability because such a challenge calls the "valid[ity]" of the arbitration agreement itself into question. Bazzle, 539 U.S. at 452.

It is against this backdrop that we review the Puleos' contention that the District Court impermissibly intruded upon the province of the arbitrator when it addressed their argument that the Arbitration Agreement's class action waiver is unconscionable.

---

within a larger contract, apart from the validity of the contract as a whole, a court decides the threshold question of the enforceability of the arbitration provisions." Jackson v. Rent-A-Center West, Inc., 581 F.3d 912, 915 (9th Cir. 2009).

**B.**

As our discussion thus far makes plain, under the law of this Circuit and others, the well-settled general rule is that when a contractual party challenges the validity of an arbitration agreement by contending that one or more of its terms is unconscionable and unenforceable, a question of arbitrability is presented. As Chase correctly argues, we have consistently employed this approach, holding that a party's unconscionability challenge to the enforcement of one or more terms of an arbitration agreement presents a gateway matter for judicial determination. See, e.g., Parilla, 368 F.3d at 276 ("Applying the relevant state contract law, a court may . . . hold that an agreement to arbitrate is unenforceable based on a generally applicable contractual defense, such as unconscionability.") (emphasis added, quotation marks and citations omitted); Alexander, 341 F.3d at 264; Spinetti, 324 F.3d at 214.

In the Puleos' argument that this general rule should not apply to their case, we discern four principal contentions. The Puleos argue: (1) that because they are "willing" to arbitrate (albeit not under the express terms of their Arbitration Agreement), no question of arbitrability is presented here; (2) that under the Supreme Court's decision in Green Tree v. Bazzle, the arbitrator should determine whether an otherwise binding arbitration agreement bars class actions; (3) that because the parties' Arbitration Agreement contains a severability clause, the District Court erred in considering the unconscionability of any of its terms; and (4) that, even if their challenge to the class action waiver raised a question of arbitrability, the Arbitration Agreement demonstrates that the parties clearly and unmistakably intended to arbitrate questions

-15-

of arbitrability. We are not persuaded by any of these arguments, which we address in turn below.

1.

The Puleos' first contention as to why their challenge to the class action waiver does not raise a question of arbitrability stems from the fact that they are amenable to arbitration in the abstract. That is, although the Puleos oppose the enforcement of the express terms of their Arbitration Agreement—which makes clear that arbitration is to occur on an individual basis only, and that "the arbitrator shall have no authority to proceed" on a class or representative basis, (App. 63)—they do not oppose having their contractually proscribed class claims sent to arbitration for the arbitrator to rule on the unconscionability of the class action waiver. Because they oppose the enforcement of the terms of their own Arbitration Agreement, but not the requirement of arbitration in general, the Puleos argue that their challenge to the class action waiver merely presents a question of arbitration procedure, not a gateway question of arbitrability. See Howsam, 537 U.S. at 84 (noting that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide") (quotation marks and citation omitted).

We do not agree. As an initial matter, under the FAA, a district court does not issue an order compelling arbitration in the abstract. Rather, as the Supreme Court has recognized, § 4 of the FAA "confers only the right to obtain an order directing that 'arbitration proceed in the manner provided for in [the parties'] agreement.'" Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 475 (1989) (quoting 9 U.S.C. § 4) (alterations in original). In other words,

-16-

in the absence of a threshold question regarding the validity of the arbitration agreement itself or the applicability of an arbitration agreement to a given dispute, the FAA "requires courts to enforce privately negotiated agreements to arbitrate . . . in accordance with their terms."[5] Id. at 478 (emphasis added); cf. Allstate Settlement Corp. v. Rapid Settlements, Ltd., 559 F.3d 164, 169 (3d Cir. 2009) ("Arbitration is fundamentally a creature of contract, and an arbitrator's authority is derived from an agreement to arbitrate.") (quotation marks and citation omitted). The terms of the parties' Arbitration Agreement are clear—the Agreement makes plain that an arbitrator has "no authority to proceed" over a class arbitration. (App. 62-63.) Enforcing the Agreement "in accordance with [its] terms" means granting precisely the relief that Chase requested before the District Court—an order compelling the parties to arbitrate their claims on an individual basis. Volt, 489 U.S. at 478; see also Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 559 (7th Cir. 2003) ("The Arbitration Agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing class action arbitration, so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis.") (quotation marks and citations omitted). Under the FAA and the terms of the Arbitration Agreement, then, the District Court could not

---

[5] The Supreme Court recently reemphasized this point in Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., in which the Court stated that "the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." --- S. Ct. ----, 2010 WL 1655826, at *11 (Apr. 27, 2010) (quotation marks and citation omitted).

have compelled class arbitration without first addressing whether the class action waiver was unconscionable.

The Puleos' argument regarding their class claims is self-contradictory. In order to present their class claims to an arbitrator, the Puleos needed to obtain a court order that invalidated the Arbitration Agreement's class action waiver and that compelled class arbitration. This is because unless it addressed the validity of the ban on class arbitration, the District Court could not have ordered the parties to submit their dispute to class arbitration without running afoul of the FAA's directive that arbitration agreements be enforced in accordance with their terms. See 9 U.S.C. § 4; see also Volt, 489 U.S. at 478. And without a court order compelling class arbitration, the Puleos could not have presented their class claims to the arbitrator—the rules of the American Arbitration Association ("AAA") make plain that where, as here, a contract bans class arbitration, the AAA will not hear class claims "unless an order of a court directs the parties to the underlying dispute to submit any aspect of their dispute involving class claims, consolidation, joinder or the enforceability of such provisions, to an arbitrator." (App. 108.) By arguing that the District Court should have compelled class arbitration without addressing the validity of the express contractual ban on class arbitration, the Puleos would have us ignore the plain language of both 9 U.S.C. § 4 and their own Arbitration Agreement.[6] We decline to indulge the Puleos'

_____

[6] Like the Puleos, the dissent overlooks the significance of the parties' Arbitration Agreement and the statutory text of § 4 of the FAA. The Puleos manifestly are not "willing to proceed to arbitration according to the concrete terms of their arbitration

-18-

desire to have it both ways—i.e., to have the District Court compel the parties to arbitrate class claims without first addressing the validity of the class action waiver.

Moreover, notwithstanding the fact that they are amenable to arbitration in the abstract, by challenging the enforceability of the class action waiver, the Puleos are necessarily challenging the validity of the agreement to arbitrate. The provision targeted by the Puleos goes to the heart of the arbitrator's authority to hear claims arising under the Cardmember Agreement, in that it provides unambiguously that "the arbitrator shall have no authority to proceed" on a class or representative basis. (App. 63 (emphasis added).) A challenge to this provision, which designates a clear boundary of arbitral authority, is a far cry from procedural questions over "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met," which are matters for the arbitrator. Howsam, 537 U.S. at 85 (citation and emphasis omitted). An arbitrator can resolve these latter procedural issues, as well as the merits of the underlying dispute, without deciding the existence and scope of his or her own jurisdiction, which arbitrators are neither well-suited, nor generally permitted, to assess. See, e.g., Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 111 (3d Cir. 2000) ("[A]llow[ing] the arbitrators to determine their own jurisdiction

agreement." Dissenting Op. at p. 2. The District Court could not both order class arbitration and compel arbitration "in the manner provided for in [the parties'] agreement," without considering whether the class arbitration waiver is unconscionable. 9 U.S.C. § 4.

-19-

. . . is not permitted in the federal jurisprudence of arbitration, for the question whether a dispute is to be arbitrated belongs to the courts unless the parties agree otherwise.") (citing First Options, 514 U.S. at 944). The same cannot be said for the class arbitration ban—under the express terms of the Arbitration Agreement, a challenge to this provision necessarily calls into question the very authority of the arbitrator to preside over the dispute, and, by extension, the validity of the Agreement itself.[7] This is a question of arbitrability for the court to resolve, irrespective of the Puleos' amenability to arbitration in the abstract.

In explaining the types of issues that present questions of arbitrability, the Supreme Court has emphasized the significance of the parties' reasonable expectations. As the Court discussed in Howsam, the term "question of arbitrability" is "applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." Howsam, 537 U.S. at 83-84 (emphasis

---

[7] The dissent's suggestion that the class arbitration waiver is not intertwined with the arbitrator's jurisdiction is incorrect. The Agreement clearly states that the arbitrator "shall have no authority to proceed" over a class arbitration, and the parties are bound by that language. See Allstate, 559 F.3d at 169 ("Arbitration is fundamentally a creature of contract[.]") (citation omitted).

-20-

added).  Given the Arbitration Agreement's provision expressly restricting the arbitrator's authority to preside over a class arbitration, we think it obvious that the "contracting parties would likely have expected a court" to decide whether that very provision is unconscionable.  Id.

In concluding that the Puleos' challenge to the class action waiver is a challenge to the validity of the Arbitration Agreement, we concur with the Court of Appeals for the Second Circuit, which recently addressed a largely identical appeal.  In the case of In re Am. Express Merchs.' Litig., 554 F.3d 300 (2d Cir. 2009), the Second Circuit considered the enforceability of an arbitration provision barring class actions within a very similar cardmember agreement.  The court addressed the same question now before us—whether the court or arbitrator should pass judgment on the enforceability of an explicit class action waiver.  In that case, as in ours, the plaintiffs were "amenable to proceeding to arbitration," id. at 321, although they sought to arbitrate on a class-wide basis.  The district court in that case agreed with the position advocated by the Puleos; it referred the decision concerning the enforceability of the class action waiver to the arbitrator, holding that "enforceability of the collective action waivers is a claim for the arbitrator to resolve.  Issues relating to the enforceability of the contract and its specific provisions are for the arbitrator, once arbitrability is established."  In re Am. Express Merchs.' Litig., No. 03-CV-9592, 2006 WL 662341, at *6 (S.D.N.Y. Mar. 16, 2006).  The Second Circuit, however, soundly rejected the decision of the district court, noting that a challenge to the explicit class action bar was, in essence, a challenge to the agreement to arbitrate:

The plaintiffs are plainly challenging the Card

-21-

Acceptance Agreement's arbitration clause insofar as they dispute the enforceability of its class action waiver and, by extension, the validity of the parties' agreement to arbitrate. Their challenge is to the arbitration clause itself, rather than to the entirety of the Card Acceptance Agreement. This appeal therefore involves a gateway dispute about whether the parties are bound by a given arbitration clause, a dispute which raises a question of [arbitrability] for a court to decide.

In re Am. Express Merchs.' Litig., 554 F.3d at 311 (internal quotation marks and citations omitted). We agree with the Second Circuit that a challenge to the enforceability of an explicit class action waiver within an arbitration agreement is a challenge to the validity of the parties' agreement to arbitrate, and thus a question for the court to decide.

2.

Contrary to the Puleos' contentions, the Supreme Court's plurality opinion in Bazzle does not compel a contrary conclusion. The Puleos rely upon Bazzle in arguing that a party's "stand-alone challenge to [a] class action waiver does not raise an issue of arbitrability" because it is merely a procedural matter for the arbitrator to decide. (Appellants' Br. at 20.) But Bazzle does not stand for the broad proposition for which the Puleos cite it. In Bazzle, the Supreme Court confronted "a problem concerning the contracts' silence. Are the contracts in fact silent, or do they forbid class arbitration . . . ?" 539 U.S. at 447. The Court explained that this matter of contract interpretation in the face of contractual silence was for

-22-

the arbitrator.  Id. at 451.  As the Bazzle plurality concluded, "the question—whether the agreement forbids class arbitration—is for the arbitrator to decide."  Id.

The dispute in Bazzle, therefore, did not present a question relating to the validity of the arbitration agreement—it was a dispute about what the contract actually said.  Here, by contrast, there is no doubt over "what kind of arbitration proceeding the parties agreed to."  Id. at 452 (noting that a dispute over the "kind of arbitration proceeding" agreed to could properly be decided by an arbitrator, but a dispute over the validity of an arbitration clause or its applicability to an underlying dispute was not a proper question for the arbitrator) (emphasis omitted).  The question Bazzle confronted is thus inapplicable to agreements like the one at issue herein, which expressly and unmistakably proscribes class arbitration and which leaves no question as to "whether the agreement forbids class arbitration."  Bazzle, 539 U.S. at 451; see, e.g., Kristian v. Comcast Corp., 446 F.3d 25, 54 (1st Cir. 2006) ("Bazzle does not apply here because of the clarity of the prohibition against class arbitration."); In re Am. Express Merchs.' Litig., 554 F.3d at 311 n.10 (same).

Moreover, Bazzle certainly did not hold that an unconscionability challenge to a class action waiver provision in an arbitration agreement is a matter for the arbitrator, not the court, to decide.  The issue in Bazzle was the existence, not the validity, of a class action waiver, see Kristian, 446 F.3d at 54, and, post-Bazzle, courts have consistently treated challenges to the enforceability of class action waivers as matters for judicial, not arbitral, resolution.  See, e.g., Homa, 558 F.3d at 233;  In re Am. Express Merchs.' Litig., 554 F.3d at 311-12;  Gay v.

CreditInform, 511 F.3d 369, 394-95 (3d Cir. 2007); Kristian, 446 F.3d at 54; Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 174-75 (5th Cir. 2004). We therefore conclude that the Puleos' reliance upon Bazzle is misplaced.

3.

Nor can we agree with the Puleos' contention that because the parties' Arbitration Agreement contains a severability clause, the District Court erred in considering the unconscionability of the class action waiver. The severability clause provides that "if any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force." (App. 63.) Relying on this provision, the Puleos argue that the District Court, faced with their contention that the class action waiver was unconscionable, should have ignored the question of unconscionability and instead directed its attention to the question of whether the class action waiver, if found unconscionable, could ultimately be severed from the remainder of the Arbitration Agreement. Had the District Court done so, say the Puleos, it would have concluded that their unconscionability challenge to the class action waiver does not call the validity of the Arbitration Agreement as a whole into question, because whether or not the waiver is unconscionable, it would not impact the requirement of arbitration.

Once again, however, the plain language of the parties' Arbitration Agreement undermines the force of the Puleos' argument. The severability clause upon which the Puleos rely is phrased in the conditional: "if any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force." (App. 63

-24-

(emphasis added).)  The clause thus provides for a two-step analysis—first, assess whether any provision of the Arbitration Agreement is unenforceable, and if so, then assess the severability of the unenforceable provision.  The District Court followed precisely this order of analysis in addressing the Puleos' challenge to the class action waiver, and, given the express language of the parties' Agreement, it can hardly be faulted for having done so.  Because it held, at the first step of the analysis, that the waiver provision was not unconscionable, the District Court did not reach (and indeed, should not have reached) the secondary issue of severability.  As the Court of Appeals for the Second Circuit explained when confronted by a litigant's effort to invoke a severability clause under comparable circumstances:

> The severability clause . . . has no relevance to this appeal.  According to its terms, the severability clause applies "[i]n the event that any provision of this Agreement, or the application of such provision shall be held by a court of competent jurisdiction to be contrary to law . . . ." The district court, however, did not hold any provision of the arbitration agreement to be contrary to law. . . . Thus, the district court did not trigger any application of the severability clause and, as a result, the question of whether or not the clause can "save" the arbitration agreement is not properly raised on this appeal.

Ragone, 595 F.3d at 123.

This analysis is in accord with the approach to the issue of severability that we have consistently adopted when

-25-

addressing unconscionability challenges to arbitration agreements. That is, when confronted by a litigant's claim that a provision of an arbitration agreement is unconscionable, we have always considered, first, whether the provision is in fact unenforceable, and, if so (and only if so), whether the unenforceable provision may be severed from the remainder of the arbitration agreement. See, e.g., Parilla, 368 F.3d at 276 ("We set forth below the relevant principles of unconscionability and will apply those principles to the arbitration terms at issue in this case. We will then determine whether it is appropriate to sever any unenforceable provisions from the parties' agreement to arbitrate.") (emphasis added); Alexander, 341 F.3d at 270 (applying unconscionability first, severability second order of analysis); Spinetti, 324 F.3d at 221-22 (same); cf. Delta Funding Corp. v. Harris, 426 F.3d 671, 675 (3d Cir. 2005) ("Is the arbitration agreement at issue in this case, or any provision thereof, unconscionable under New Jersey law, and if so, should such provision or provisions be severed.") (citation omitted, emphasis added). Other Circuits employ this same two-step order of analysis, contrary to the Puleos' contention that we should put the severability cart before the unconscionability horse. See, e.g., In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 292 (4th Cir. 2007); Hadnot v. Bay, Ltd., 344 F.3d 474, 478 (5th Cir. 2003); Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 683 (8th Cir. 2001). The two-step nature of this inquiry—unconscionability first, severability second—is likewise implicit in the language of the Restatement (Second) of Contracts, which explains severability as an "if/then" concept. See Restatement (Second) of Contracts § 184(1) ("If less than all of an agreement is unenforceable under the rule stated in § 178, a court may nevertheless enforce the rest

-26-

of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.") (emphasis added).

The Puleos' suggestion that a court intrudes upon the province of the arbitrator any time it addresses the unconscionability of a provision of an arbitration clause that it subsequently finds is severable from the agreement runs contrary to our precedent and that of our sister circuits. In Spinetti, for example, we found two terms of an arbitration agreement unconscionable, but determined that the unenforceable terms could be severed from the remainder of the contract. 324 F.3d at 219-20; accord Scovill v. WSYX/ABC, 425 F.3d 1012, 1017 (6th Cir. 2005) (finding provision of arbitration agreement unconscionable and then severing unconscionable term pursuant to severability clause); Hadnot, 344 F.3d at 478 (same); Gannon, 262 F.3d at 680-81 (same). The Puleos would apparently have us hold that in each of these cases, the court overstepped its bounds by addressing the issue of unconscionability in the first instance, since in each case, the provisions in question, whether or not unconscionable, were ultimately severable from an otherwise enforceable arbitration agreement. We see no basis in our cases, nor in the Supreme Court's arbitration jurisprudence, for such a holding. Particularly in light of the conditional language of the severability clause in the parties' Arbitration Agreement, we disagree with the Puleos' suggestion that the District Court erred in considering their unconscionability argument before addressing the severability of the class action waiver.

4.

-27-

Finally, the Puleos argue that even if their unconscionability challenge to the class action waiver presented a question of arbitrability, the parties intended to present such questions to the arbitrator, not the court. As we have noted, under the Supreme Court's arbitration jurisprudence, while the general rule is that questions of arbitrability are for the court to resolve, parties can contract around this rule if they desire to arbitrate arbitrability. See First Options, 514 U.S. at 944-45. The Supreme Court has made clear, however, that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." Id. at 944 (quoting AT&T Techs., 475 U.S. at 649) (alterations in original). As First Options explains, "given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." Id. at 945 (citation omitted). We have described the burden on a litigant seeking to prove that the parties intended for the arbitrator to decide questions of arbitrability as "onerous." Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007).

We agree with Chase that the Puleos have not met this burden. The provision of the Arbitration Agreement upon which the Puleos rely states that "[c]laims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember

-28-

Agreement," and it further states that "the term 'Claim' is to be given the broadest possible meaning." (App. 63.) The first set of claims described in this provision—claims "regarding the applicability of this Arbitration Agreement," (App. 63 (emphasis added)—are certainly not at issue in this dispute. Claims regarding "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" are indeed questions of arbitrability.[8] See Howsam, 537 U.S. at 84. Under the terms of the parties' contract, if any party in this case actually questioned whether the Puleos' complaint about Chase's retroactive interest rate increases fell within the scope of the Arbitration Agreement, such a question would be for the arbitrator. But there is no question in this case concerning the scope or applicability of the Arbitration Agreement. That is, Chase and the Puleos agree that the Puleos' complaint about the retroactive interest rate increase falls within the scope of the Arbitration Agreement; they disagree only about whether the class action waiver provision of the Arbitration Agreement is valid. Because there is no dispute in this case "regarding the applicability of this Arbitration Agreement" to the substantive

---

[8] The Supreme Court set forth examples of claims challenging the applicability of an arbitration clause in Howsam—a dispute regarding "whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement" is a question concerning the applicability of an arbitration agreement, as is a disagreement over "whether a clause providing for arbitration of various 'grievances' covers claims for damages for breach of a no-strike agreement." Howsam, 537 U.S. at 84 (citations omitted). No such question of applicability is presented in this case.

dispute between the parties, (App. 63), the first clause of the provision relied upon by the Puleos does not "clearly and unmistakably" show that the parties intended to arbitrate the validity of the class action waiver. Howsam, 537 U.S. at 83 (citation omitted); see also Ehleiter, 482 F.3d at 215, 222.

Nor is there a dispute between Chase and the Puleos concerning "the validity of the entire Cardmember Agreement or any prior Cardmember Agreement." (App. 63.) Arbitration jurisprudence distinguishes between a "challenge . . . to the arbitration clause itself," and a challenge targeting the contract as a whole. Buckeye, 546 U.S. at 445-46; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). The parties' Arbitration Agreement makes clear that the latter category of challenges—disputes concerning "the validity of the entire Cardmember Agreement," (App. 63)—are for the arbitrator. The Arbitration Agreement is silent, however, with regard to who decides challenges "to the arbitration clause itself," Buckeye, 546 U.S. at 446, and the Supreme Court has made clear that "silence or ambiguity on the 'who should decide arbitrability' point" must be resolved in favor of judicial resolution of questions of arbitrability. First Options, 514 U.S. at 945. The Puleos do not contest "the validity of the entire Cardmember Agreement," (App. 63), by, e.g., alleging that the entire contract is illegal and void. See Buckeye, 546 U.S. at 446. Instead, they challenge "the validity of arbitration provisions within a larger contract, apart from the validity of the contract as a whole," a matter which the Arbitration Agreement cannot be read to refer to the arbitrator. Jackson, 581 F.3d at 915. In sum, the Puleos have failed to adduce clear and unmistakable evidence that the parties intended to arbitrate questions concerning the validity of the arbitration agreement,

which is fatal to their argument that the District Court should have referred such a question of arbitrability to the arbitrator. See First Options, 514 U.S. at 945.

## IV.

For the foregoing reasons, we conclude that the Puleos' challenge to the Arbitration Agreement's class action waiver presents a question of arbitrability that the District Court appropriately addressed. We will therefore affirm the District Court's order compelling the parties to arbitrate their claims on an individual basis.

RENDELL, Circuit Judge, with whom Circuit Judges AMBRO, FISHER and CHAGARES join, dissenting.

Judge Fuentes writes persuasively for the majority in concluding that when a party urges that the "unconscionability" of a provision invalidates an arbitration agreement, the issue should be decided in the first instance by a court, not an arbitrator. I, too, might be persuaded were it not for the unique features of the specific situation before us, not the least of which is the fact that the arbitrability of the dispute between the parties is *not* at issue, because the parties both agree that the case should go to arbitration and they do not urge that the presence of the class action waiver affected the formation of the agreement to arbitrate, or its validity. The majority fails to acknowledge this.

## I.

It is important to begin by focusing on the Supreme Court's opinion in *Howsam v. Dean Witter Reynolds, Inc.*, which clearly limits the types of issues a court should decide. 537 U.S. 79 (2002). There, the Supreme Court made it clear that courts should only consider gateway issues of "arbitrability" in a "limited" and "narrow" set of circumstances; namely, when there is a dispute about whether the parties are bound by a given arbitration clause at all, or when there is a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of dispute. *Id.* at 83-84. Accordingly, unless the pertinent question is (1) are the parties bound to arbitrate, or (2) did the parties agree to arbitrate the issue being raised, the matter must be referred to the arbitrator. With that in mind, I turn to the specific fact pattern presented.

The features of this case, from the standpoint of the issues presented, and the fact pattern before the District Court, are very unusual indeed. First and foremost, the parties both *agree* that the plaintiffs' case should be arbitrated. No one is contending that the parties are not bound to arbitrate, notwithstanding the majority's view to the contrary. The proceedings in the District Court confirm this. Chase filed a motion to compel arbitration. The District Court's Order of August 12, 2008, explicitly noted that the Puleos "support [Chase's] motion [to compel arbitration] to the extent that it seeks arbitration and dismissal of their claims in court" and that the Puleos "are asking the court to grant [Chase's] motion by compelling the parties to arbitrate all of their claims, including their claims challenging the validity of the contract provision barring class action proceedings in arbitration." Dist. Ct. Order 1 n.1 (App. 2). This is not, as the majority suggests, simply an expression of amenability to arbitration "in the abstract." Majority Op. at 16. The Puleos are willing to proceed to arbitration according to the concrete terms of their arbitration agreement – all twelve paragraphs of it. This makes a huge difference. The significance of this fact and its bearing on who the appropriate decisionmaker is cannot be overstated.

Since it is clear that the parties agree that the case will go to arbitration – whether as a class action or as plaintiffs' individual suit – there is no issue of "arbitrability," and there is no issue as to the arbitrator's jurisdiction. No one – neither the court nor the arbitrator – needs to decide the "jurisdiction" of the arbitrator. The arbitrator has jurisdiction over the case; the case will be arbitrated – no ifs, ands, or buts. There remains only the question of how the case will go forward – whether as a class

2

action or an individual suit. But that question is akin to the question in *Bazzle*, "what *kind of arbitration proceeding* the parties agreed to," and that question is one that an arbitrator is perfectly "well situated to answer." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452-53 (2003) (emphasis in original).[1]

The majority makes much of the language from the

---

[1] The majority is correct that *Bazzle* involved a contract that was arguably unclear as to whether or not it forbade class actions. The contract here is not unclear on this point. However, the majority dismisses *Bazzle* too quickly. In *Bazzle*, as here, there was an issue as to whether an arbitration could proceed as a class action or whether it must proceed as an individual suit. The Supreme Court did not hesitate in allowing the matter to go to an arbitrator, even given this uncertainty, and even given the possibility that the arbitrator might find that, indeed, the contract did bar class actions. The important point is not that the situation is identical to that in *Bazzle*; it is that the basic question is the same: whether or not a particular arbitration agreement, properly understood and enforced in accordance with the relevant law, bars class actions. This question is *not* a "question of arbitrability" that has to be decided by a court – the Supreme Court explicitly held otherwise. In *Bazzle*, this question was raised because the contract was unclear; here, the question is raised because of an unconscionability challenge to the class action waiver. But the basic question – should the arbitration proceed on an individual basis or as a class action – is the same. And, as the Supreme Court makes clear in *Bazzle*, this question is not a question of *arbitrability*. 539 U.S. at 452-53.

arbitration agreement that states that "the arbitrator shall have no authority to proceed" with arbitration on a class basis, citing that phrase four times, once with emphasis. Majority Op. at 16, 18, 19, 20 n.7. This language is, of course, part of the arbitration agreement's bar on class actions, which, if found by the arbitrator to be unconscionable, will be irrelevant. The majority interprets this phrase as suggesting that the arbitrator will be in the position to decide "the existence and scope of his or her own jurisdiction" if the arbitrator is allowed to decide whether the class action waiver is unconscionable. Majority Op. at 20. However, the concern over an arbitrator's deciding "his own jurisdiction" arises when there is uncertainty as to whether a particular dispute is one that the parties agreed to arbitrate. *See, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-45 (1995). That determination is uniquely reserved for a court, as the Supreme Court has made clear in *Howsam*. 537 U.S. at 84. A court should decide whether the arbitrator has jurisdiction over a certain matter, *i.e.*, did the parties agree to arbitrate it? A challenge to a class action waiver in the arbitration agreement does not implicate the arbitrator's jurisdiction. The use of the word "authority" simply indicates that the arbitrator is not to conduct an arbitration as a class action. (Curiously, the sentence at issue is followed by a sentence indicating that either party can elect not to proceed as a class action; presumably, if neither so "elects," the case would in fact proceed as a class action.)

Second, and a very close second in terms of significance: the Puleos did not urge that the unconscionability of the class

4

action waiver implicated the dispute's arbitrability.[2] Nor did the District Court consider, let alone decide, any issue bearing on the validity of the arbitration agreement. Chase asked the District Court to enforce both the class action waiver and the rest of the arbitration agreement. The Puleos' response urged that the class action waiver was unconscionable, but did not suggest that the arbitration agreement was invalid or unenforceable. So there was no challenge presented to the "validity" of the arbitration agreement.[3] They challenge only

---

[2] The majority's repeated use of the phrase "validity of the agreement" and related phrases (*e.g.* Majority Op. at 19, 20, 21, 31) to describe what the Puleos are challenging cannot convert this case into one involving the validity of the arbitration agreement: repetition does not make it so. This phrase, let alone this concept, simply does not appear in the District Court's Order. Instead, the District Court properly characterizes the Puleos as "challenging the validity of the contract provision barring class action proceedings in arbitration" and as "challenging the validity of the arbitration clause's express class action prohibition." Dist. Ct. Order 2-3 n.1 (App. 2-3). The issue presented is: how should the case proceed – individually, or as a class action? The District Court decided that the waiver was not unconscionable. That is the ruling that we are to review.

[3] It is for this reason that the majority's extended discussion of "severability" largely misses the mark. The Puleos have never challenged the validity of the arbitration agreement. And, as noted above, Chase filed a motion to compel arbitration. The issue of severability arises only because Chase now raises the

5

one aspect of that agreement, and do not suggest that this challenge has any bearing on the validity of the agreement as a whole. Moreover, there is no allegation that the unconscionability of the class action waiver affected the formation of the agreement to arbitrate, or rendered either

---

specter that an attack on one part of the arbitration agreement could invalidate the whole arbitration agreement. We need not even reach this issue if we find, as we should, that the Puleos are not challenging the validity of the arbitration agreement. Even so, Chase's argument that seeks to nullify – or revise – the very severability provision that it included in the form agreement is quite weak: if the class action waiver was so integral as to not be severable, why did Chase include an explicit severability clause in the arbitration provision that failed to except out the class action waiver? Many contracts of this sort either explicitly prohibit severance of the class action waiver, or except the class action waiver from the severability clause. *See, e.g.*, *Homa v. Am. Express Co.*, 558 F.3d 225, 234 (3d Cir. 2009) (Weis, J., concurring) (contract included a provision in the arbitration clause that stated that if the class action waiver were deemed invalid or unenforceable, then the entire arbitration provision would not apply); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1098 (9th Cir. 2009) (arbitration agreement included a provision prohibiting severance of the class action waiver); *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 n.3 (11th Cir. 2007) (noting that "[t]he severability clause in the Arbitration Provision states: 'In [sic] the class action waiver clause is found to be illegal or unenforceable, the entire Arbitration Provision will be unenforceable.'"). Surely Chase should not be permitted to rewrite the agreement that it prepared.

6

party's assent involuntary.[4]  This makes this case unique; the context in which the argument as to the "unconscionability" of a class action waiver typically arises involves the plaintiff's claim that the waiver's unconscionability renders the arbitration provision invalid or unenforceable, thus implicating the agreement to arbitrate.  The cases that the majority relies on involve that scenario.[5]  That simply is not the case here.

---

[4] There is no claim that the presence of the class action waiver renders the parties' promises illusory, or so one-sided, or so overreaching as to nullify the agreement.  Were that the case, a bank's inclusion of such a provision would always result in its having to litigate in court rather than arbitrate.  This cannot be.

[5] The majority's long list of Court of Appeals decisions that are "unanimous" in "recognizing that an unconscionability challenge to the provisions of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide," Majority Op. at 13-15, are all factually distinguishable.  In particular, all of those cases either (1) include an explicit challenge to the validity or applicability of the *entire* arbitration agreement (not just one provision of it) or (2) raise fundamental challenges to whether the parties were bound by the agreement at all.  Not a single one of them presents a situation like the one before us in which both parties concede the appropriateness of arbitration.  *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 123 (2d Cir. 2010) (plaintiff specifically challenged arbitrability); *Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009) (plaintiff contended that the arbitration agreement was unconscionable); *Dale*, 498 F.3d at 1218-19 & n.3 (plaintiffs "disputed having

7

Accordingly, since there is no issue as to whether the parties are bound to arbitrate, the only remaining question is whether the issue of the unconscionability of the class action waiver is a dispute that the parties agreed to arbitrate. *Howsam*, 537 U.S. at 83. Here, no one is contending that this issue was somehow reserved for the court by agreement, or was not one that was agreed to be arbitrated. Indeed, it would be difficult to do so, as the "Claims" subject to arbitration are as broad as can

---

received" the contract and challenged the entire arbitration agreement); *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (plaintiff contested the validity of the entire arbitration agreement); *Kristian v. Comcast Corp.*, 446 F.3d 25, 31, 37 (1st Cir. 2006) (numerous challenges to formation and to provisions of the arbitration agreement); *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 274 (3d Cir. 2004) (plaintiff urged that the entire agreement to arbitrate was unenforceable); *Spahr v. Secco*, 330 F.3d 1266, 1268-69 (10th Cir. 2003) (challenge to the arbitration agreement on the basis of mental capacity); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1180 (9th Cir. 2003) (the arbitration agreement was "permeated with objectionable provisions"); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 636, 639 (4th Cir. 2002) (challenge to the validity of the whole contract, including the arbitration agreement, as void *ab initio*); *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 843 (7th Cir. 1999) (the entire arbitration clause was unconscionable); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996) (the arbitration clauses were "not valid and enforceable").

8

be.[6]

---

[6] The arbitration agreement requires the parties to arbitrate

> all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money, damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future. As used in this Arbitration Agreement, the term Claim is to be given *the broadest possible meaning*.

App. 63 (emphasis added).

9

Moreover, whether the case will proceed as a class action is clearly a "procedural question," and the Supreme Court, and we, have stated time and again that matters of procedure are to be decided by the arbitrator. *Howsam*, 537 U.S. at 84; *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 586-87 (3d Cir. 2007). One would thus expect an arbitration provision to specify matters of procedure that are not to be arbitrated. Since the issue of the class action waiver's unconscionability is not an issue of arbitrability, and is not reserved for the court by agreement, it should have been referred by the District Court to the arbitrator.[7]

## II.

The majority opinion proceeds from the notion that issues of unconscionability must always be decided by courts. Perhaps if the unconscionability issue implicates the validity of the

---

[7] The majority's extended discussion (pp. 28-31) of *First Options* is beside the point. The majority stresses both that questions of arbitrability are for a court to decide, and that a court "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) (alterations in original)). However, whether to arbitrate arbitrability is not before us; there is no issue of arbitrability.

arbitration agreement, and, in turn, arbitrability, this is correct.[8] However, where the issue is "arbitrable," it violates the very policy behind arbitration to have the court decide the issue before referring it to arbitration.[9]

The majority correctly notes that the Supreme Court has continuously reinforced a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The majority also correctly emphasizes that the Supreme Court has made it clear that courts have only a limited role to play – appropriately

---

[8] However, I submit that even if there were a challenge to the validity of the arbitration agreement based on unconscionability of the class action waiver, this could be viewed as presenting an issue of *enforceability*, rather than a threshold issue as to whether the parties entered into a binding agreement. We have routinely held that an unconscionability challenge is a defense to the enforcement of a contract, *see, e.g.*, *Parilla*, 368 F.3d at 275-76, and in *Howsam*, the Supreme Court stated that defenses to enforcement are not matters of arbitrability. 537 U.S. at 84-85 ("[T]he presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." (internal quotation marks omitted)).

[9] Indeed, in *Buckeye*, the validity of the entire agreement – which contained an arbitration agreement – was challenged, and, in keeping with the parties' arbitration agreement, the Supreme Court held that the matter should be referred to the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).

11

resolving "[t]he question whether the parties have submitted a particular dispute to arbitration," *Howsam*, 537 U.S. at 83 – when the agreement between two parties leaves the answer to that question uncertain. Additionally, the majority appropriately stresses that what counts as this kind of "question of arbitrability" is to be construed in a limited fashion, quoting *Howsam*:

> Linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope.

537 U.S. at 83. Unfortunately, however, after this careful presentation of much of the relevant Supreme Court jurisprudence, the majority fails to appreciate the nuances in the situation at hand, and, as a result, runs roughshod over the parties' agreement to arbitrate. The majority relies on the Supreme Court's decision in *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996), but, in doing so, it blurs a vital distinction between (1) cases in which a party challenges

12

one term (or a few terms) of an arbitration agreement, but does not challenge the validity of the entire arbitration agreement and indeed concedes arbitrability; and (2) cases in which a party challenges the validity of the entire arbitration agreement. The Supreme Court's decision in *Doctor's Associates* fits in the latter category, as the relevant arbitration clause was challenged in its entirety. Here, we are presented with the former.[10]

In a similarly problematic vein, the majority asserts that "[t]he Courts of Appeals are unanimous in recognizing that an unconscionability challenge to the *provisions* of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide." Majority Op. at 13 (emphasis added). The majority's formulation, however, elides the same crucial distinction: whether the unconscionability challenge is to *a provision* of an arbitration agreement or to *all the provisions* of an arbitration agreement (*i.e.*, to the arbitration agreement *itself*). The majority's formulation suggests that this is a distinction without a difference, but the Supreme Court jurisprudence regarding the appropriate role for courts in this context tells us otherwise.

---

[10] The other two cases cited by the majority are similarly inapposite. *Homa* did not discuss what might constitute a question of arbitrability and simply repeats the language from *Doctor's Associates*. *Homa*, 558 F.3d at 226. And in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000), the Supreme Court was considering a challenge that an entire "agreement to arbitrate [was] unenforceable" because the agreement said nothing about the costs of arbitration.

13

The Supreme Court has been very clear: courts should not find "questions of arbitrability" except in those cases in which such questions are clearly and definitely present. *See, e.g.*, *Buckeye*, 546 U.S. at 444 (there is a question of arbitrability only where there is a challenge "specifically" to the validity of the agreement to arbitrate). Only when a party challenges the "validity of the arbitration agreement" *in toto* – whether on grounds of unconscionability, or some other ground – is a question of arbitrability presented. The cases cited by the majority stand for this proposition. The Supreme Court's admonition in *Howsam*, however, makes it clear that courts should not conclude that parties are challenging the validity of the *entire* arbitration agreement unless that is unequivocally the case. The majority runs afoul of this admonition in assuming that the Puleos are challenging the "validity of the arbitration agreement" *in toto* simply by virtue of challenging the class action waiver.

No case cited by the majority supports the proposition that an unconscionability challenge to *a single* provision of an arbitration agreement necessarily raises a question of arbitrability, particularly where, as here, the party raising the unconscionability challenge concedes the validity of the rest of the arbitration agreement and has agreed to go to arbitration.[11]

As we have stressed, "[a]rbitration is fundamentally a creature of contract, and an arbitrator's authority is derived from an agreement to arbitrate." *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 169 (3d Cir. 2009) (internal

---

[11] *See supra* n.5.

14

quotation marks and citation omitted). The Supreme Court recently reaffirmed that it is the parties' expectations and intentions that control, and that the parties are generally free to structure their arbitration agreements as they see fit. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. --- , No. 08-1198, 2010 WL 1655826, at *11-12 (Apr. 27, 2010). Thus, it is not for us to decide what should and should not be arbitrated. Here, the parties agreed that "all Claims" should be submitted to arbitration. The dispute over whether the class action waiver should be enforced is a claim that the parties agreed to arbitrate. The District Court should not have decided this issue. Doing so violated the parties' agreement.

## CONCLUSION

In order to follow the Supreme Court's directives in *Howsam*, and to give effect to the parties' agreement to arbitrate in this case, we should conclude that this challenge to the class action waiver in the concededly valid arbitration agreement entered into by the Puleos does not raise an issue of arbitrability, and should have been referred by the District Court to the arbitrator.

15