

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-24-2009

# Homa v. Amer Express Co

Precedential or Non-Precedential: Precedential

Docket No. 07-2921

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Homa v. Amer Express Co" (2009). *2009 Decisions.* Paper 1796.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1796

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-2921

———

G.R. HOMA, individually and on behalf of all others
similarly situated,

Appellant

v.

AMERICAN EXPRESS COMPANY; AMERICAN
EXPRESS CENTURION BANK

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 06-cv-02985)
District Judge: Honorable Joel A. Pisano

———

Argued on December 1, 2008

Before: AMBRO, WEIS, and VAN ANTWERPEN, <u>Circuit
Judges</u>.

(Filed: February 24, 2009 )

F. Paul Bland, Jr., Esq. (Argued)
Public Justice
1825 K Street, N.W.
Suite 200
Washington, D.C. 20006

Gary S. Graifman, Esq.
Kantrowitz, Goldhamer & Graifman
210 Summit Avenue
Montvale, NJ 07645

*Counsel for Appellant*

Julia B. Strickland, Esq. (Argued)
David W. Moon, Esq.
Stroock, Stroock & Lavan
2029 Century Park East
Suite 1800
Los Angeles, CA 90067

Louis A. Smith, Esq.
Greenberg Traurig
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932

*Counsel for Appellee*s

———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

This matter came before the United States Court of Appeals for the Third Circuit on appeal from a final judgment of the United States District Court for the District of New Jersey. Appellant brought a class action and Appellees filed a motion to compel arbitration based upon an agreement between the parties. The District Court treated the motion to compel as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and dismissed Appellant's complaint with prejudice in favor of arbitration on an individual basis. This appeal raises important issues under state law. Nevertheless, we must first consider whether the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, precludes this Court from applying state law unconscionability principles to void a class-arbitration waiver. We conclude that it does not. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[U]nconscionability[] may be applied to invalidate arbitration agreements without contravening [the FAA].").

## I. Factual and Procedural Background

American Express Centurion Bank ("AECB") is a Utah industrial bank engaged in the business of, among other things, issuing American Express credit cards. American Express Company ("AEC") is a New York corporation and is the ultimate parent of AECB. In September of 2003, AEC started a promotional credit card reward program in which it

3

claimed that users of its "Blue Cash" credit card ("Blue Cash card") could earn up to 5% cash back on purchases made with the card. On February 8, 2004, AECB issued a Blue Cash card to Appellant G.R. Homa ("Homa"), a New Jersey resident. On June 29, 2006, Homa filed a complaint in the District of New Jersey, purporting to represent a class of New Jersey consumers who obtained a Blue Cash card on or after September 30, 2003, as well as a subclass of New Jersey cardholders who carried a monthly balance on their cards. Homa contends that AEC and AECB (collectively, "Appellees") misrepresented the actual terms of the rewards program and failed to award him the promised amount of cash back in violation of the New Jersey Consumer Fraud Act.

Upon issuance of the Blue Cash card, Appellees mailed Homa a document entitled Agreement Between American Express Credit Cardmember and American Express Centurion Bank ("Agreement"), which delineated the terms and conditions governing each cardholder's account. The Agreement included a provision requiring arbitration of all claims upon election of either party and that specifically required all claims to "be arbitrated on an individual basis . . . [with] no right or authority for any Claims to be arbitrated [as] a class action." ("class-arbitration waiver"). The Agreement also included a choice-of-law provision indicating that any disputes arising out of the Agreement would be governed by Utah state law.

Appellees cited the aforementioned clauses from the Agreement in arguing that Homa should be required to arbitrate his claims on an individual basis because Utah law

4

expressly allows class-arbitration waivers in consumer credit agreements. Homa, on the other hand, argued that New Jersey law applied because, as the application of Utah law would violate New Jersey's public policy against certain class-arbitration waivers, New Jersey choice-of-law principles dictated that the Agreement's choice of Utah law was invalid. The District Court agreed with Appellees and ultimately dismissed Homa's complaint with prejudice in favor of arbitration on an individual basis.

## II. Jurisdiction and Standard of Review

Federal jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(d). This Court has appellate jurisdiction under 9 U.S.C. § 16(a)(3). "We exercise plenary review over questions regarding the validity and enforceability of an agreement to arbitrate." *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 357 (3d Cir. 2007).

## III. Choice-of-law

Appellees contend that the Agreement's choice of Utah law governs the current dispute. If the choice-of-law clause is valid, Homa's appeal will fail, as Utah Code Ann. § 70C-4-105 expressly allows class action waivers in consumer credit agreements. In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state, which in this case is New Jersey. *See Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002) (citing *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487 (1941)).

5

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice *if it does not violate New Jersey's public policy.*" *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992) (citations omitted) (emphasis added). In deciding whether to enforce a contractual choice of law, the Supreme Court of New Jersey has cited the Restatement (Second) of Conflicts of Laws § 187(2) (1969) ("Restatement"), which provides that the law of the state chosen by the parties will apply unless

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* (asterisks in original); *see also North Bergen Rex Transport, Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 847-48 (N.J. 1999) (quoting same language).

Homa contends that *Muhammad v. County Bank of Rehoboth Beach, Del.*, 912 A.2d 88 (N.J. 2006), indicates that the Agreement's ban on class-arbitration violates a fundamental public policy of New Jersey. *Muhammad* held that a class-arbitration waiver in a consumer contract between a customer and a bank that gave out "pay day loans" was unconscionable and stated that the "most important" consideration in its holding was "the public interests affected by the contract." 912 A.2d at 99. In analyzing the public

6

interests factor, *Muhammad* engaged in a lengthy discussion of the virtues of the class action mechanism, ultimately concluding that

> [a]s a matter of generally applicable state contract law, it was unconscionable for defendants to deprive [plaintiff] of the mechanism of a class-wide action, whether in arbitration or in court litigation. The public interest at stake in [the ability of consumers] effectively to pursue their statutory rights under [New Jersey's] consumer protection laws overrides the defendants' right to seek enforcement of the class-arbitration bar in their agreement.

*Id*. at 100-01. *Muhammad* ultimately struck the class action waiver and remanded with instructions to arbitrate on a class-wide basis. *Id.* at 103.

*Muhammad* suggests that the Supreme Court of New Jersey might well find that the application of Utah law allowing class-arbitration waivers in the context of a low-value consumer credit suit violates a fundamental policy of New Jersey.[1] Before discussing this issue further, however,

---

[1]The District Court made no findings of fact as to the potential value of the New Jersey Consumer Fraud Act claims in this case. Because the District Court treated Appellees' "Motion to Compel Arbitration And Dismiss Action In Favor of Arbitration, Or Alternatively, Stay Action Pending Arbitration" as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we will, for the purposes of our discussion, accept Appellant's contention that "[b]ecause of the nature of the individual class members' claims in this litigation, few, if any, could . . . afford to seek legal redress" if the case could not be resolved on a class basis. *See Palcko v. Airborne Express, Inc.*,

we first must dispose of Appellees' argument that the FAA and this Court's decision in *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007), preclude us from applying New Jersey unconscionability principles to a class-arbitration waiver.

## IV. The Federal Arbitration Act

Under Section 2 of the FAA, "an agreement in writing to submit to arbitration an existing controversy arising out of [a transaction involving commerce] shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*."  9 U.S.C. § 2 (emphasis added).  The United States Supreme Court has interpreted the italicized provision as meaning that

> state law may be applied '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'  Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.

*Doctor's Associates*, 517 U.S. at 686-87 (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (emphasis in original)) (citations omitted).  Accordingly, this Court has stated that "[t]he federal policy encouraging recourse to arbitration

---

372 F.3d 588, 597 (3d Cir. 2004) ("Our prior decisions support the traditional practice of treating a motion to compel as a motion to dismiss for failure to state a claim upon which relief can be granted."); *Umland v. PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (when reviewing a district court's decision under Rule 12(b)(6), this Court must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff).

requires federal courts to look first to the relevant state law of contracts . . . in deciding whether an arbitration agreement is valid under the FAA." *Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003); *see also Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263-70 (3d Cir. 2003) (finding an arbitration agreement unconscionable under Virgin Islands law).

In *Gay*, this Court addressed an argument that a class-arbitration waiver should not be enforced because it was unconscionable and ultimately applied the parties' choice of Virginia law in concluding that the waiver was valid. 511 F.3d at 387-95. The *Gay* Court then engaged in a lengthy discussion of Pennsylvania law and rejected two Pennsylvania cases—*Lytle v. CitiFinancial Servs., Inc.*, 810 A.2d 643 (Pa. Super. Ct. 2002) (abrogated by *Salley v. Option One Mortgage Corp.*, 925 A.2d 115 (Pa. 2007)), and *Thibodeau v. Comcast Corp.*, 912 A.2d 874 (Pa. Super. Ct. 2006)—as being preempted by the FAA:

> To the extent . . . that *Lytle* and *Thibodeau* hold that the inclusion of a waiver of the right to bring judicial class actions in an arbitration agreement constitutes an unconscionable contract, they are not based 'upon such grounds as exists at law or in equity for the revocation of *any* contract' pursuant to section 2 of the FAA, and therefore cannot prevent the enforcement of the arbitration provision in this case.

*Gay*, 511 F.3d at 394 (quoting 9 U.S.C. § 2) (emphasis in original). In support of this statement, *Gay* reasons that

> [i]t would be sophistry to contend . . . that the Pennsylvania cases do not 'rely on the uniqueness

9

of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable[,]' [because], though the Pennsylvania cases are written ostensibly to apply general principles of contract law, they hold that an agreement to arbitrate may be unconscionable simply because it is an agreement to arbitrate.

*Id.* at 395 (quoting *Perry*, 482 U.S. at 492 n.9).

We note at the outset that *Gay*'s discussion of whether Pennsylvania law is preempted by the FAA appears to be dicta, as the Court "determined that [it] should enforce the terms of [the] choice-of-law provision selecting the application of Virginia law" and concluded that the class-arbitration waiver at issue was not unconscionable under that law, but nonetheless engaged in a discussion of unconscionability under Pennsylvania law—"*even if* we disregard the . . . choice-of-law provision and apply Pennsylvania law . . . we *would* reach the same result." *Gay*, 511 F.3d at 390-92 (emphases added); *see also In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000) (defining "dictum as 'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding'") (quoted reference omitted).

Whether dicta or not, Appellees contend that *Gay*'s rejection of *Lytle* and *Thibodeau* dictates our course here. More specifically, Appellees argue that, even if the choice-of-law provision were invalidated and New Jersey law were applied, under *Gay* the FAA would preempt us from even considering whether the class-arbitration waiver is unconscionable under *Muhammad*. We disagree. Whatever is true of *Lytle* and *Thibodeau*, *Muhammad* plainly does not "hold that an agreement to arbitrate may be unconscionable

10

simply because it is an agreement to arbitrate." *Gay*, 511 F.3d at 395. What was held unconscionable in *Muhammad* was not that the arbitration clause prevented the bringing of a judicial class action; rather, it was that the arbitration provision "deprive[d] Muhammad of the mechanism of a class-wide action, *whether in arbitration or in court litigation*." 912 A.2d at 100–01 (emphasis added). In other words, the defense *Muhammad* provides is a general contract defense, one that applies to all waivers of class-wide actions, not simply those that also compel arbitration. Therefore, there are no grounds for FAA preemption. *See Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1221 (9th Cir. 2008) (holding that the application to an arbitration provision of a general ban on class-action waivers was not preempted by the FAA because that ban "appl[ies] equally to a contract that permits only individual, not aggregate, litigation in court").

*Gay* only compels the opposite conclusion if, as Appellees suggest, it is read as a blanket prohibition on unconscionability challenges to class-arbitration provisions. But such a reading is in direct conflict with the language of the Supreme Court, which clearly holds that "generally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Associates*, 517 U.S. at 686-87; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) ("Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'"). Thus Appellees' argument that *Gay* prohibits use of *Muhammad* to challenge the Agreement's class-arbitration waiver is unpersuasive.

**V.**

11

Having determined that the FAA would not prevent this Court from applying New Jersey law to the current case, we return to the choice-of-law issue. As discussed *supra* in Section III, this Court must predict whether the parties' choice of Utah law, which expressly allows class-arbitration waivers, would be enforced under New Jersey's choice-of-law rules.

In light of the *Muhammad* court's holding that "[t]he public interest at stake in . . . consumers['] [ability to effectively] pursue their statutory rights under [New Jersey's] consumer protection laws " constituted the "most important" reason for holding a similar class-arbitration waiver unconscionable, we predict that the Supreme Court of New Jersey would find that the class-arbitration waiver at issue violates the fundamental public policy of New Jersey. 912 A.2d at 99-101. In coming to the opposite conclusion, the District Court made much of *Muhammad*'s "confirm[ation] that class-arbitration waivers are not 'per se unenforceable[.]'" *Homa v. American Exp. Co.*, Civ. No. 06-2985, 496 F. Supp. 2d 440, 448 (D.N.J. 2007) (quoting *Muhammad*, 912 A.2d at 101). We do not find this reasoning persuasive because *Muhammad*'s public-interests analysis addressed an issue identical to that presented in the current case—whether the Supreme Court of New Jersey would "permit enforcement of the provision in plaintiff's contract that *allegedly* precludes any realistic challenge to the substance of her . . . contract's terms." *Muhammad*, 912 A.2d at 99 (emphasis added). The *Muhammad* court answered that question with a resounding "no," noting that a class action waiver becomes "problematic 'when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties *predictably* involve small amounts of damages.'" *Id.* (quoting *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal. 2005) (holding that a class-arbitration waiver in a consumer credit contract

12

was unconscionable)).

In the current case, as in *Muhammad*, the contract at issue bears the hallmarks of a contract of adhesion—it was "'presented on a take-it-or-leave-it basis, . . . in a standardized printed form, [and] without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars'"—and, as Appellant's underlying claim implicates less than five percent of a cardholder's overall credit card balance, "predictably involves a small amount of damages." *Id.* at 96, 99 (quoting *Rudbart v. North Jersey Dist. Water Supply Comm'n*, 605 A.2d 681, 685 (N.J. 1992)). Assuming—as is proper at the 12(b)(6) stage—that the claims at issue are of low monetary value,[2] the District Court should have denied

[2]We are aware that, the same day *Muhammad* was decided, the Supreme Court of New Jersey decided *Delta Funding Corp. v. Harris*, 912 A.2d 104 (N.J. 2006), which arrived at a result different than that reached in *Muhammad*. The court was careful to distinguish the two decisions:

In *Muhammad* . . . we found a class-arbitration waiver unconscionable in the context of low-value consumer claims. 912 A.2d at 99. *Muhammad* is distinguishable from the instant case, as Harris is seeking more than $100,000 in damages, and it is unclear whether that includes application of statutory multipliers. The plaintiff's potential damages in *Muhammad* . . ., including statutory damage multipliers, totaled less than $600 in a complicated matter. 912 A.2d at 100. Harris's claim is not the type of low-value suit that would not be litigated absent the availability of a class proceeding. Harris has adequate incentive to bring her claim as an individual action. Not only are her damages substantial, but the fact that her home is at stake in the foreclosure

13

the 12(b)(6) motion and concluded that, in light of *Muhammad*, at this stage the class-arbitration waiver at issue violates New Jersey's fundamental public policy.

Having decided that, at this stage, the class-arbitration waiver violates fundamental New Jersey public policy as applied to small-sum cases, we will now examine the other two prongs of Restatement § 187(2)(b)—that New Jersey law would apply in the absence of the parties' choice-of-law provision and that New Jersey has a materially greater interest than Utah in the determination of the waiver's validity. We combine the analysis of the remaining § 187(2)(b) prongs because, as New Jersey choice-of-law rules "require[] application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation[,]" New Jersey law will necessarily apply in the absence of an agreement if New Jersey has a materially greater interest than Utah in the determination of the class-arbitration waiver's validity. *Gantes v. Kason Corp.*, 679 A.2d 106, 109 (N.J. 1996).

New Jersey's governmental-interest analysis requires an initial inquiry into whether there is an actual conflict between the laws of Utah and New Jersey. *Id.* Comparison of *Muhammad*, which declared unconscionable a class-arbitration waiver that would preclude relief under New

---

proceeding makes it likely that she would contact an attorney. The same cannot be said of low-value claims where individuals have little, if any, incentive to seek out an attorney.

*Delta Funding*, 912 A.2d at 115 (internal parallel citations omitted).

Jersey's Consumer Fraud Act ("NJCFA"), with Utah Code Ann. § 70C-4-105, which explicitly states that class-action waivers in open-end consumer credit contracts are valid, reveals such a conflict. Having established an actual conflict, we must now "'identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties'" so that we can determine which state has the greater interest in resolving the issue of the class-arbitration waiver's validity. *Id.* at 485 (quoting *Veazey v. Doremus*, 510 A.2d 1187, 1189 (N.J. 1986)).

We have already discussed the policies underlying *Muhammad*'s holding that "[t]he public interest at stake in . . . consumers['] [ability to effectively] pursue their statutory rights under [New Jersey's] consumer protection laws overrides the defendants' right to seek enforcement of the class-arbitration bar in their agreement." 912 A.2d at 100-01. This is consistent with the fact that the "available legislative history of [the NJCFA] demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation . . . [and] should be construed liberally in favor of protecting consumers." *Huffmaster v. Robinson*, 534 A.2d 435, 437-38 (N.J. Super. Ct. Law Div. 1986) (internal quotation marks omitted). The parties have pointed us to no caselaw[3] which directly addresses Utah Code Ann. § 70C-4-105 or the policies underlying it, and our own research has

---

[3]Although we have not found any caselaw specific to Utah, the subject has been thoroughly discussed in many cases and law review articles. *See, e.g.,* Jack Wilson, *"No-Class-Action Arbitration Clauses," State-Law Unconscionability, and the Federal Arbitration Act: A Case for Federal Judicial Restraint and Congressional Action*, 23 QUINNIPAC L. REV. 737 (2004).

uncovered none. However, the fact that Utah is, to our knowledge, the only state to have enacted such legislation indicates a strong policy in favor of the enforcement of the waivers. It is not unreasonable to assume that the Utah law was enacted because of policies honoring freedom-of-contract principles and intending to protect Utah banks from unwarranted class-action suits.

Appellees emphasize Utah's contacts to the parties, asserting that Utah is both the place of contracting and the place of performance. They further assert that the "subject matter" of the contract, Appellant's account, is located in Utah, because Appellee AECB is a Utah bank. On the other hand, Appellee AECB is a wholly owned subsidiary of Appellee AEC, a New York corporation, and, despite the contract's statement that AECB is located in Utah, Homa must mail his credit card payments to Florida. New Jersey has considerable contacts to the parties as well—Appellant is a New Jersey resident and was physically located in New Jersey during all of his dealings with Appellees. New Jersey undoubtedly has the most significant contacts with the litigation, as the only claims asserted are violations of the NJCFA. Given the contacts that New Jersey and Utah have with the parties and the litigation, and the policy reasons underlying the states' conflicting laws—particularly New Jersey's interest in protecting its consumers' ability to enforce their rights under the Consumer Fraud Act—we predict that the Supreme Court of New Jersey would determine that New Jersey has a materially greater interest than Utah in the enforceability of a class-arbitration waiver that could operate to preclude a New Jersey consumer from relief under the NJCFA.

We conclude that, if this is a small-sum case, then the Supreme Court of New Jersey would apply New Jersey law to

16

the class-arbitration waiver. Having made that determination, we must now apply New Jersey law to Appellant's unconscionability claim. We conclude that this issue comes out the same way as the choice-of-law issue. That is, we hold that, if the claims at issue are of such a low value as effectively to preclude relief if decided individually, then, under *Muhammad*, the application of Utah law to the class-arbitration waiver is invalid and the class-arbitration waiver is unconscionable. We will thus reverse the District Court order dismissing this case in favor of arbitration and remand for further proceedings consistent with this opinion.

Weis, J., <u>Circuit Judge</u>, <u>concurring</u>.

We remand essentially because the District Court's ruling, constrained as it was by Rule 12(b)(6) of the Federal Rules of Civil Procedure, did not fully address all of the matters relevant to the contention that the Cardmember Agreement contains an unconscionable class-action waiver. Because all of the factors bearing on that issue are not pertinent to our limited review in this case, the question of unconscionability under New Jersey law remains open for consideration on remand. <u>See</u> <u>Sands v. McCormick</u>, 502 F.3d 263, 267 (3d Cir. 2007) (when reviewing a motion to dismiss under Rule 12(b)(6), we must accept a plaintiff's factual allegations as true, but "need not credit a plaintiff's 'bald assertions' or 'legal conclusions'") (quoting <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)). Our opinion should be read with that understanding.

The parties may note that the New Jersey Supreme Court in <u>Muhammad v. County Bank of Rehoboth Beach, Del.</u>, 912 A.2d 88 (N.J. 2006), relied on several factors in

17

striking the class-action ban explaining, however, that such a prohibition is not *per se* unconscionable. Id. at 96-97, 101; see also Delta Funding Corp. v. Harris, 912 A.2d 104, 115 (N.J. 2006) ("under New Jersey law, [a] class-arbitration waiver in [an] arbitration agreement is not unconscionable per se"). Muhammad initially considered whether it was presented with an adhesion contract, including its subject matter, "the parties' relative bargaining positions," and the amount of "economic compulsion motivating the 'adhering' party." Id. at 96-97 (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 605 A.2d 681, 687 (N.J. 1992)).

Also relevant in Muhammad were "the public interests affected by the contract." Id. at 97 (quoting Rudbart, 605 A.2d at 687). The opinion expressed concern over the consumer's ability to obtain representation and counsel's incentive to undertake the litigation. Id. at 99-100. Matters bearing on the Court's appraisal included the lawsuit's complexity, the amount of damages involved, and the availability of attorneys' fees and statutory multipliers. Id. at 100. The size of potential damages was considered to be an important consideration and was used to limit the holding to "low-value" cases. Id. at 100 & n.5; see also Harris, 912 A.2d at 115 (class-action arbitration ban was not unconscionable when the damages involved were much greater than those in Muhammad). Significantly, however, the Court did not define the critical limitation, "low-value."

Complexity, or its lack, in the underlying claim may be an important factor to be explored.

When briefing the elements pertinent in Muhammad, the parties should consider that the case before us alleges a violation of New Jersey's Consumer Fraud Act and its provisions for both treble damages and attorneys' fees.

18

N.J.S.A. 56:8-19.  Under that statute, any counsel fees awarded include time reasonably spent preparing and prosecuting the case and need not necessarily be proportionate to the damages recovered.  Silva v. Autos of Amboy, Inc., 632 A.2d 291, 295-98 (N.J. Super. Ct. App. Div. 1993).  The New Jersey Supreme Court has explained that the legislature, intent on protecting consumers' rights, included attorneys' fees in the Act's recovery provision "to attract competent counsel to counteract the community scourge of fraud by providing incentive for an attorney to take a case involving a minor loss to the individual."  Wanetick v. Gateway Mitsubishi, 750 A.2d 79, 82 (N.J. 2000) (quoting Lettenmaier v. Lube Connection, Inc., 741 A.2d 591, 593 (N.J. 1999)).

The parties might also consider whether a provision in the arbitration clause affects the public interests involved in the case.  The pertinent excerpt reads, "should any portion of th[e] 'Restrictions on Arbitration' provision be deemed invalid or unenforceable, then the entire Arbitration Provision (other than this sentence) shall not apply."  If the District Court strikes the class-action ban as unconscionable and is compelled to apply the agreement's prohibition on that procedure, it is possible that the parties are not required to arbitrate and may, instead, proceed to court.  The parties might address whether the potential loss of the arbitral forum affects the public interests involved.

Our opinion does not explore in depth the many issues often involved in a controversy over class-action arbitration, a procedure lacking the safeguards included in federal law governing judicial class-actions.  A number of law review articles have discussed the complexities underlying cases like the one before us.  For two articles that present differing perspectives, see Jean R. Sternlight As Mandatory Binding Arbitration Meets the Class Action, Will the Class Action

19

Survive?, 42 Wm. & Mary L. Rev. 1 (2000), and Jack Wilson "No-Class-Action Arbitration Clauses," State-Law Unconscionability, and the Federal Arbitration Act:  A Case for *Federal* Judicial Restraint and Congressional Action, 23 Quinnipiac L. Rev. 737 (2004).  The parties might find these and similar articles helpful.