RENDELL, Circuit Judge,
with whom Circuit Judges AMBRO, FISHER and CHAGARES join, dissenting.
Judge Fuentes writes persuasively for the majority in concluding that when a party urges that the “unconscionability” of a provision invalidates an arbitration agreement, the issue should be decided in the first instance by a court, not an arbitrator. I, too, might be persuaded were it not for the unique features of the specific situation before us, not the least of which is the fact that the arbitrability of the dispute between the parties is not at issue, because the parties both agree that the case should go to arbitration and they do not urge that the presence of the class action waiver affected the formation of the agreement to arbitrate, or its validity. The majority fails to acknowledge this.
I.
It is important to begin by focusing on the Supreme Court’s opinion in Howsam v. Dean Witter Reynolds, Inc., which clearly *189 limits the types of issues a court should decide. 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). There, the Supreme Court made it clear that courts should only consider gateway issues of “arbitrability” in a “limited” and “narrow” set of circumstances; namely, when there is a dispute about whether the parties are bound by a given arbitration clause at all, or when there is a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of dispute. Id. at 83-84, 123 S.Ct. 588. Accordingly, unless the pertinent question is (1) are the parties bound to arbitrate, or (2) did the parties agree to arbitrate the issue being raised, the matter must be referred to the arbitrator. With that in mind, I turn to the specific fact pattern presented.
The features of this case, from the standpoint of the issues presented, and the fact pattern before the District Court, are very unusual indeed. First and foremost, the parties both agree that the plaintiffs’ case should be arbitrated. No one is contending that the parties are not bound to arbitrate, notwithstanding the majority’s view to the contrary. The proceedings in the District Court confirm this. Chase filed a motion to compel arbitration. The District Court’s Order of August 12, 2008, explicitly noted that the Púleos “support [Chase’s] motion [to compel arbitration] to the extent that it seeks arbitration and dismissal of their claims in court” and that the Púleos “are asking the court to grant [Chase’s] motion by compelling the parties to arbitrate all of their claims, including their claims challenging the validity of the contract provision barring class action proceedings in arbitration.” Dist. Ct. Order 1 n. 1 (App.2). This is not, as the majority suggests, simply an expression of amenability to arbitration “in the abstract.” Majority Op. at 181. The Púleos are willing to proceed to arbitration according to the concrete terms of their arbitration agreement — all twelve paragraphs of it. This makes a huge difference. The significance of this fact and its bearing on who the appropriate decisionmaker is cannot be overstated.
Since it is clear that the parties agree that the case will go to arbitration— whether as a class action or as plaintiffs’ individual suit — there is no issue of “arbitrability,” and there is no issue as to the arbitrator’s jurisdiction. No one — neither the court nor the arbitrator — needs to decide the “jurisdiction” of the arbitrator. The arbitrator has jurisdiction over the case; the case will be arbitrated — no ifs, ands, or buts. There remains only the question of how the case will go forward— whether as a class action or an individual suit. But that question is akin to the question in Bazzle, “what kind of arbitration proceeding the parties agreed to,” and that question is one that an arbitrator is perfectly “well situated to answer.” Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452-53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (emphasis in original).[1]
*190 The majority makes much of the language from the arbitration agreement that states that “the arbitrator shall have no authority to proceed” with arbitration on a class basis, citing that phrase four times, once with emphasis. Majority Op. at 181, 182, 183 n. 7. This language is, of course, part of the arbitration agreement’s bar on class actions, which, if found by the arbitrator to be unconscionable, will be irrelevant. The majority interprets this phrase as suggesting that the arbitrator will be in the position to decide “the existence and scope of his or her own jurisdiction” if the arbitrator is allowed to decide whether the class action waiver is unconscionable. Majority Op. at 183. However, the concern over an arbitrator’s deciding “his own jurisdiction” arises when there is uncertainty as to whether a particular dispute is one that the parties agreed to arbitrate. See, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). That determination is uniquely reserved for a court, as the Supreme Court has made clear in Howsam, 537 U.S. at 84, 123 S.Ct. 588. A court should decide whether the arbitrator has jurisdiction over a certain matter, i.e., did the parties agree to arbitrate it? A challenge to a class action waiver in the arbitration agreement does not implicate the arbitrator’s jurisdiction. The use of the word “authority” simply indicates that the arbitrator is not to conduct an arbitration as a class action. (Curiously, the sentence at issue is followed by a sentence indicating that either party can elect not to proceed as a class action; presumably, if neither so “elects,” the case would in fact proceed as a class action.)
Second, and a very close second in terms of significance: the Púleos did not urge that the unconscionability of the class action waiver implicated the dispute’s arbitrability.[2] Nor did the District Court consider, let alone decide, any issue bearing on the validity of the arbitration agreement. Chase asked the District Court to enforce both the class action waiver and the rest of the arbitration agreement. The Púleos’ response urged that the class action waiver was unconscionable, but did not suggest that the arbitration agreement was invalid or unenforceable. So there was no challenge presented to the “validity” of the arbitration agreement.[3] They *191 challenge only one aspect of that agreement, and do not suggest that this chailenge has any bearing on the validity of the agreement as a whole. Moreover, there is no allegation that the unconsciona- , .... „ ? ,. . „„ , , bility of the class action waiver aneeted the formation of the agreement to arbitrate, or rendered either party’s assent involuntary.[4] This makes this case unique; the context in which the argument as to the “unconseionability” of a class action waiver typically arises involves the plaintiffs claim that the waiver’s unconscionaMity renders the arMtration ision in_ ... „ ,, . .. .. valid or uneniorceable, thus implicating ^ & the agreement to arbitrate. _ The cases ^hat the majority relies on involve that scenario.[5] That simply is not the case here.
*192 Accordingly, since there is no issue as to whether the parties are bound to arbitrate, the only remaining question is whether the issue of the unconscionability of the class action waiver is a dispute that the parties agreed to arbitrate. Howsam, 537 U.S. at 83, 123 S.Ct. 588. Here, no one is contending that this issue was somehow reserved for the court by agreement, or was not one that was agreed to be arbitrated. Indeed, it would be difficult to do so, as the “Claims” subject to arbitration are as broad as can be.[6]
Moreover, whether the case will proceed as a class action is clearly a “procedural question,” and the Supreme Court, and we, have stated time and again that matters of procedure are to be decided by the arbitrator. Howsam, 537 U.S. at 84, 123 S.Ct. 588; Certain Underwriters at Lloyd’s London v. Westchester Fire Ins. Co., 489 F.3d 580, 586-87 (3d Cir.2007). One would thus expect an arbitration provision to specify matters of procedure that are not to be arbitrated. Since the issue of the class action waiver’s unconscionability is not an issue of arbitrability, and is not reserved for the court by agreement, it should have been referred by the District Court to the arbitrator.[7]
II.
The majority opinion proceeds from the notion that issues of unconscionability must always be decided by courts. Perhaps if the unconscionability issue implicates the validity of the arbitration agreement, and, in turn, arbitrability, this is correct.[8] However, where the issue is “arbitrable,” it violates the very policy behind arbitration to have the court decide the issue before referring it to arbitration.[9]
*193 The majority correctly notes that the Supreme Court has continuously reinforced a “liberal federal policy favoring arbitration agreements.” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The majority also correctly emphasizes that the Supreme Court has made it clear that courts have only a limited role to play — appropriately resolving “[t]he question whether the parties have submitted a particular dispute to arbitration,” Howsam, 537 U.S. at 83, 123 S.Ct. 588 — when the agreement between two parties leaves the answer to that question uncertain. Additionally, the majority appropriately stresses that what counts as this kind of “question of arbitrability” is to be construed in a limited fashion, quoting Howsam:
Linguistically speaking, one might call any potentially dispositive gateway question a “question of arbitrability,” for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court’s case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase “question of arbitrability” has a far more limited scope.
537 U.S. at 83, 123 S.Ct. 588. Unfortunately, however, after this careful presentation of much of the relevant Supreme Court jurisprudence, the majority fails to appreciate the nuances in the situation at hand, and, as a result, runs roughshod over the parties’ agreement to arbitrate. The majority relies on the Supreme Court’s decision in Doctor’s Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), but, in doing so, it blurs a vital distinction between (1) cases in which a party challenges one term (or a few terms) of an arbitration agreement, but does not challenge the validity of the entire arbitration agreement and indeed concedes arbitrability;' and (2) cases in which a party challenges the validity of the entire arbitration agreement. The Supreme Court’s decision in Doctor’s Associates fits in the latter category, as the relevant arbitration clause was challenged in its entirety. Here, we are presented with the former.[10]
In a similarly problematic vein, the majority asserts that “[t]he Courts of Appeals are unanimous in recognizing that an unconscionability challenge to the provisions of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide.” Majority Op. at 180 (emphasis added). The majority’s formulation, however, elides the same crucial distinction: whether the uneonscionability challenge is to a provision of an arbitration agreement or to all the provisions of an arbitration agreement (i.e., to the arbitration agreement itself). The majority’s formulation suggests that this is a distinction without a difference, but the Supreme Court jurisprudence regarding the appropriate role *194 for courts in this context tells us otherwise.
The Supreme Court has been very clear: courts should not find “questions of arbitrability” except in those eases in which such questions are clearly and definitely present. See, e.g., Buckeye, 546 U.S. at 444, 126 S.Ct. 1204 (there is a question of arbitrability only where there is a challenge “specifically” to the validity of the agreement to arbitrate). Only when a party challenges the “validity of the arbitration agreement” in toto — whether on grounds of unconscionability, or some other ground — is a question of arbitrability presented. The eases cited by the majority stand for this proposition. The Supreme Court’s admonition in Howsam, however, makes it clear that courts should not conclude that parties are challenging the validity of the entire arbitration agreement unless that is unequivocally the case. The majority runs afoul of this admonition in assuming that the Púleos are challenging the “validity of the arbitration agreement” in toto simply by virtue of challenging the class action waiver.
No case cited by the majority supports the proposition that an unconscionability challenge to a single provision of an arbitration agreement necessarily raises a question of arbitrability, particularly where, as here, the party raising the unconscionability challenge concedes the validity of the rest of the arbitration agreement and has agreed to go to arbitration.[11]
As we have stressed, “[arbitration is fundamentally a creature of contract, and an arbitrator’s authority is derived from an agreement to arbitrate.” Allstate Settlement Corp. v. Rapid Settlements, Ltd., 559 F.3d 164, 169 (3d Cir.2009) (internal quotation marks and citation omitted). The Supreme Court recently reaffirmed that it is the parties’ expectations and intentions that control, and that the parties are generally free to structure their arbitration agreements as they see fit. Stolt-Nielsen S.A. v. AnimalFeeds Int’l Corp., 559 U.S.-, 130 S.Ct. 1758, 1774, — L.Ed.2d - (2010). Thus, it is not for us to decide what should and should not be arbitrated. Here, the parties agreed that “all Claims” should be submitted to arbitration. The dispute over whether the class action waiver should be enforced is a claim that the parties agreed to arbitrate. The District Court should not have decided this issue. Doing so violated the parties’ agreement.
CONCLUSION
In order to follow the Supreme Court’s directives in Howsam, and to give effect to the parties’ agreement to arbitrate in this case, we should conclude that this challenge to the class action waiver in the concededly valid arbitration agreement entered into by the Púleos does not raise an issue of arbitrability, and should have been referred by the District Court to the arbitrator.

. The majority is correct that Bazzle involved a contract that was arguably unclear as to whether or not it forbade class actions. The contract here is not unclear on this point. However, the majority dismisses Bazzle too quickly. In Bazzle, as here, there was an issue as to whether an arbitration could proceed as a class action or whether it must pi'oceed as an individual suit. The Supreme Court did not hesitate in allowing the matter to go to an arbitrator, even given this uncertainty, and even given the possibility that the arbitrator might find that, indeed, the contract did bar class actions. The important point is not that the situation is identical to that in Bazzle; it is that the basic question is the same: whether or not a particular arbitration agreement, properly understood and enforced in accordance with the relevant law, bars class actions. This question is not a *190 "question of arbitrability” that has to be decided by a court — the Supreme Court explicitly held otherwise. In Bazzle, this question was raised because the contract was unclear; here, the question is raised because of an unconscionability challenge to the class action waiver. But the basic question — should the arbitration proceed on an individual basis or as a class action — is the same. And, as the Supreme Court makes clear in Bazzle, this question is not a question of arbifrability. 539 U.S. at 452-53, 123 S.Ct. 2402.

. The majority's repeated use of the phrase "validity of the agreement” and related phrases (e.g. Majority Op. at 182, 183, 184, 188) to describe what the Púleos are challenging cannot convert this case into one involving the validity of the arbitration agreement: repetition does not make it so. This phrase, let alone this concept, simply does not appear in the District Court's Order. Instead, the District Court properly characterizes the Púleos as "challenging the validity of the contract provision barring class action proceedings in arbitration” and as "challenging the validity of the arbitration clause’s express class action prohibition.” Dist. Ct. Order 2-3 n. 1 (App.2-3). The issue presented is: how should the case proceed — individually, or as a class action? The District Court decided that the waiver was not unconscionable. That is the ruling that we are to review.

. It is for this reason that the majority’s extended discussion of "severability” largely misses the mark. The Púleos have never challenged the validity of the arbitration agreement. And, as noted above, Chase filed a motion to compel arbitration. The issue of severability arises only because Chase now raises the specter that an attack on one part of the arbitration agreement could invalidate *191 the whole arbitration agreement. We need not even reach this issue if we find, as we should, that the Púleos are not challenging the validity of the arbitration agreement. Even so, Chase's argument that seeks to nullify — or revise — the very severability provision that it included in the form agreement is quite weak: if the class action waiver was so integral as to not be severable, why did Chase include an explicit severability clause in the arbitration provision that failed to except out the class action waiver? Many contracts of this sort either explicitly prohibit severance of the class action waiver, or except the class action waiver from the severability clause. See, e.g., Homa v. Am. Express Co., 558 F.3d 225, 234 (3d Cir.2009) (Weis, J., concurring) (contract included a provision in the arbitration clause that stated that if the class action waiver were deemed invalid or unenforceable, then the entire arbitration provision would not apply); Chalk v. T-Mobile USA, Inc., 560 F.3d 1087, 1098 (9th Cir.2009) (arbitration agreement included a provision prohibiting severance of the class action waiver); Dale v. Comcast Corp., 498 F.3d 1216, 1219 n. 3 (11th Cir.2007) (noting that "[t]he severability clause in the Arbitration Provision states: 'In [sic] the class action waiver clause is found to be illegal or unenforceable, the entire Arbitration Provision will be unenforceable.’ "). Surely Chase should not be permitted to rewrite the agreement that it prepared.

. There is no claim that the presence of the class action waiver renders the parties’ promises illusory, or so one-sided, or so overreaching as to nullify the agreement. Were that the case, a bank’s inclusion of such a provision would always result in its having to litigate in court rather than arbitrate. This cannot be.

. The majority’s long list of Court of Appeals decisions that are "unanimous” in "recognizing that an unconseionability challenge to. the provisions of an arbitration agreement is a question of arbitrability that is presumptively for the court, not the arbitrator, to decide,” Majority Op. at 180, are all factually distinguishable. In particular, all of those cases either (1) include an explicit challenge to the validity or applicability of the entire arbitration agreement (not just one provision of it) or (2) raise fundamental challenges to whether the parties were bound by the agreement at all. Not a single one of them presents a situation like the one before us in which both parties concede the appropriateness of arbitration. See Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 123 (2d Cir.2010) (plaintiff specifically challenged arbitrability); Cicle v. Chase Bank USA, 583 F.3d 549, 555 (8th Cir.2009) (plaintiff contended that the arbitration agreement was unconscionable); Dale, 498 F.3d at 1218-19 & n. 3 (plaintiffs "disputed having received” the contract and challenged the entire arbitration agreement); Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 972 (6th Cir.2007) (plaintiff contested the validity of the entire arbitration agreement); Kristian v. Comcast Corp., 446 F.3d 25, 31, 37 (1st Cir.2006) (numerous challenges to formation and to provisions of the arbitration agreement); Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 274 (3d Cir.2004) (plaintiff urged that the entire agreement to arbitrate was unenforceable); Spahr v. Secco, 330 F.3d 1266, 1268-69 (10th Cir.2003) (challenge to the arbitration agreement on the basis of mental capacity); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1180 (9th Cir.2003) (the arbitration agreement was "permeated with objectionable provisions”); Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 636, 639 (4th Cir.2002) (challenge to the validity of the whole contract, including the arbitration agreement, as void ab initio); We Care Hair Dev., Inc. v. Engen, 180 F.3d 838, 843 (7th Cir.1999) (the entire arbitration clause was unconscionable); *192 Webb v. Investacorp, Inc., 89 F.3d 252, 257 (5th Cir.1996) (the arbitration clauses were "not valid and enforceable”).

. The arbitration agreement requires the parties to arbitrate
all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money, damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or the future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning.
App. 63 (emphasis added).

. The majority's extended discussion (pp. 187-88) of First Options is beside the point. The majority stresses both that questions of arbitrability are for a court to decide, and that a court "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.” First Options, 514 U.S. at 944, 115 S.Ct. 1920 (quoting AT & T Techs., Inc. v. Commc’ns Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (alterations in original)). However, whether to arbitrate arbitrability is not before us; there is no issue of arbitrability.

. However, I submit that even if there were a challenge to the validity of the arbitration agreement based on unconscionability of the class action waiver, this could be viewed as presenting an issue of enforceability, rather than a threshold issue as to whether the parties entered into a binding agreement. We have routinely held that an unconscionability challenge is a defense to the enforcement of a contract, see, e.g., Parilla, 368 F.3d at 275-76, and in Howsam, the Supreme Court stated that defenses to enforcement are not matters of arbitrability. 537 U.S. at 84-85, 123 S.Ct. 588 ("[Tjhe presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability.” (internal quotation marks omitted)).

. Indeed-, in Buckeye, the validity of the entire agreement — which contained an arbitration agreement — was challenged, and, in keeping with the parties’ arbitration agreement, the Supreme Court held that the matter should be referred to the arbitrator. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006).

. The other two cases cited by the majority are similarly inapposite. Homa did not discuss what might constitute a question of arbitrability and simply repeats the language from Doctor’s Associates. Homa, 558 F.3d at 226. And in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the Supreme Court was considering a challenge that an entire "agreement to arbitrate [was] unenforceable” because the agreement said nothing about the costs of arbitration.

. See supra n. 5.