RENDELL, Circuit Judge,
dissenting:
The majority’s opinion is flawed for a clear and obvious reason: it relies on case-law that has no application here. Therefore, I must respectfully dissent.
In Muhammad v. County Bank of Rehoboth Beach, the New Jersey Supreme Court held that “the presence of the class-arbitration waiver in Muhammad’s consumer arbitration agreement rendered] that agreement unconscionable.” 189 N.J. 1, 912 A.2d 88, 100 (2006). Yet, despite the lack of a class arbitration waiver in the arbitration clauses here, the majority holds that a New Jersey court in 2009, at the outset of this case, would have found Muhammad controlling here. I reject that view, and urge you to read Muhammad and the actual arbitration clauses at issue here. Doing so will lead inexorably to one conclusion: this case is not Muhammad, and a motion by the Defendants in 2009 to compel arbitration thus would have^ been anything but futile. Moreover, the majority has expanded the concept of futility beyond what we as a court should recognize.
In Muhammad, the New Jersey Supreme Court considered whether to compel arbitration under an arbitration agreement in a payday loan contract that in no uncertain terms prohibited class arbitration. Specifically, in multiple places, the agreement required Muhammad to resolve all disputes related to her payday loan transaction “by binding individual (and not class) arbitration.” Id. at 92. The court held these waivers unconscionable under New Jersey law. According to the court, by forcing Muhammad to waive class arbitration in her case, which involved a small amount of damages, the arbitration agreement operated as an exculpatory clause, effectively releasing the lender from liability for possible statutory violations. See id. at 99-101.
Unsurprisingly, then, courts applying New Jersey law considered Muhammad to be relevant only when analyzing the un-conscionability of class arbitration waivers. In Homa v. American Express Co., for example, we examined an arbitration provision in a consumer agreement that re *305 quired all claims to “be arbitrated on an individual basis ... [with] no right or authority for any Claims to be arbitrated [as] a class action.” 558 F.3d 225, 227 (3d Cir. 2009). After comparing this class arbitration waiver to the “similar class-arbitration waiver” at issue in Muhammad, we deemed it unconscionable under New Jersey law. Id. at 230-31; see also, e.g., Cohen v. Chase Bank, N.A., 679 F.Supp.2d 582, 595 (D.N.J. 2010) (holding that the “the present class-action waiver” is unconscionable under Muhammad)', Davis v. Dell, Inc., No. 07-630, 2008 WL 3843837, at *4 (D.N.J. Aug. 15, 2008) (“This Court finds that this case is distinguishable from Muhammad, and the class action waiver does not act as an unconscionable exculpatory clause.”).
Here, the arbitration clauses- — which are situated in the Loan Policies and the Owners’ Policies — lack any sort of class arbitration waiver. The Loan Policies provide:
Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbi-trable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy, and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy, shall be binding upon the parties.
J.A. 3981. And the Owners’ Policies provide: “If it is permitted in your state, you or the Company may demand arbitration. The arbitration shall be binding on both you and the Company. The arbitration shall decide any matter in dispute between you and the Company.” J.A. 3997. These clauses, quite obviously, do not even mention class arbitration, let alone outright prohibit it. If the Defendants had sought individual arbitration at the outset of the case, this silence might have been interpreted to mean that the parties simply did not contemplate class arbitration. Or it might have been construed as permitting class arbitration.[1] Surely, it would not have been futile for them to move to enforce these clauses at that time.
Because the arbitration clauses here sit far outside the reach of Muhammad, as they are devoid of a class arbitration waiver, “ ‘it should have been clear to the [Defendants in 2009] that the arbitration agreements] w[ere] at least arguably enforceable.’ ” Garcia v. Wachovia Corp., 699 F.3d 1273, 1278 (11th Cir. 2012) (quoting Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC, 588 F.3d 963, 967 (8th Cir. 2009)). Indeed, the Defendants have cited not one case — let alone any controlling precedent in 2009 — in which a court applied Muhammad and held as unconscionable an arbitration *306 agreement- that contained no class arbitration waiver or prohibition. See id. (“[Absent controlling ... precedent foreclosing a right to arbitrate, a motion to compel arbitration will almost never be futile.”).
The majority contends that it does not matter that the arbitration clauses here lacked class arbitration waivers. See Majority Op. 302 n.12. According to the majority, regardless of whether these clauses contained class arbitration waivers, given Muhammad, it would have been futile in 2009 for the Defendants to seek individual arbitration. It concludes that “a New Jersey court confronted with this case in 2009 would almost certainly have found Muhammad controlling and would have denied Defendants’ motion to compel [individual] arbitration.” Id. at 302.
That conclusion is simply wrong. The majority’s analysis here fails to refer back to its own characterization of Muhammad as being animated by the explicit “class-arbitration bar,” or “class-arbitration waiver,” at issue there. Majority Op. 299, 299. This omission renders its conclusion not only arbitrary, but wrong.
Furthermore, contrary to the majority’s position, the futility inquiry is not about disregarding the actual arbitration clauses at issue and asking the question — divorced from the arbitration clauses themselves— of whether “it would have been futile to move for [individual] arbitration under [Muhammad].” Id. at 299. No circuit court has ever framed the inquiry this way, and for good reason. As noted above, the futility inquiry sensibly focuses on the enforceability of the actual arbitration clauses— that is, would it have been futile in 2009 for the Defendants to move to enforce these clauses? See, e.g., Gutierrez v. Wells Fargo Bank, NA, 704 F.3d 712, 719 (9th Cir. 2012) (“Our [futility] analysis begins with the [arbitration agreement] between Wells Fargo and the class members.”); Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 697 (9th Cir. 1986) (“Until the Supreme Court’s decision in Byrd, the arbitration agreement in this case was unenforceable.”).[2] Here, the answer is no.
But even if we were to pretend that' these clauses contained class arbitration waivers so as to implicate Muhammad, a motion to compel individual arbitration in 2009 would have been far from futile. In Muhammad, the New Jersey Supreme Court did not hold that class arbitration waivers were “per se” unconscionable — far from it. 912 A.2d at 101. Rather, in holding that particular class arbitration waiver unconscionable, it articulated a “multi-factor analysis,” one that necessitated a “fact-sensitive examination,” for courts to apply when “evaluating] claims of unconsciona-bility.” Id. at 97. A court must first determine whether the class arbitration waiver was part of a contract of adhesion. Id. at 96-97. If so, it must next consider (1) “the subject matter of the contract”; (2) “the parties’ relative bargaining positions”; (3) “the degree of economic compulsion motivating the adhering party”; and (4) “the public interests affected by the contract.” Id. at 97 (internal quotation marks omitted).
So, if we were to pretend Muhammad applied here, the Defendants could have easily argued that these arbitration clauses were not unconscionable. Most notably, they could have shown that these clauses were not part of contracts of adhesion, which would have obviated the need for the court to even consider the remaining factors. See id. (“The determination that a contract is one of adhesion ... is the be *307 ginning, not the end, of the inquiry....” (internal quotation marks omitted)). As noted by the majority in a footnote, the Plaintiffs “had the option” to “ask[ ] for a pre-printed Arbitration Endorsement which would have required both parties to consent to arbitration.” Majority Op. 301 n.10. In other words, the Plaintiffs could have avoided being forced into arbitration. The Defendants thus could have established that these contracts were not ones of adhesion because the very terms at issue — the arbitration clauses — were optional, i.e., they were not “presented on a take-it-or-leave-it basis.” Muhammad, 912 A.2d at 96; see also Nino v. Jewelry Exchange, Inc., 609 F.3d 191, 201 (3d Cir. 2010) (holding that an arbitration agreement was part of a contract of adhesion and thus procedurally unconscionable because the defendant “presented the arbitration agreement to [the plaintiff] for signature on a take-it-or-leave-it basis” (internal quotation marks omitted)). How, then, could it possibly have been futile in light of Muhammad for the Defendants to move to compel individual arbitration in 2009? I am baffled by the majority’s conclusion that “there is little doubt” that the arbitration clauses at issue here were part of contracts of adhesion. Majority Op. 301.
The Defendants’ inaction in 2009, and their about-face to seek arbitration in 2011, were no doubt driven by litigation tactics to derail the court proceedings. At the outset of the ease, they realized that moving to compel individual arbitration under the arbitration clauses here, which were silent as to class arbitration, could have exposed them to class arbitration — a situation they admitted they “would never ever open [themselves] up for.” Oral Arg. Tr. 20:37-41, July 14, 2016. That prospect then became unlikely when the Court decided Stolt-Nielsen S.A. v. AnimalFeeds International Corp. and rejected the idea that “the parties’ mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings.” 559 U.S. 662, 687, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). Fuelfed by Stolls Nielsen, they then seized the opportunity to cloak their delay under the veil of futility ostensibly afforded to them by AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). But the previous uncertainty as to class arbitration does not mean that it would have been futile in 2009 for them to move to enforce the arbitration clauses, which is the dispositive question here. It just means that they might not have succeeded in getting what they wanted: individual arbitration.
For these reasons, I respectfully dissent from the majority’s opinion. It would have been far from futile for the Defendants to move to enforce these arbitration clauses in 2009. We should therefore consider only whether their belated attempt to do so prejudiced the Plaintiffs under the factors from Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912 (3d Cir. 1992). This analysis would undoubtedly lead to our finding that the Plaintiffs were prejudiced such that the Defendants waived their right to arbitrate. The Defendants did not just warm the bench for two and a half years before moving to compel arbitration. During that time, they repeatedly contested the merits of the Plaintiffs’ claims, engaged in substantial non-merits litigation, and participated in extensive discovery that cost the Plaintiffs over $57,000. Under Hoxworth, this would not even be a close call. See id. at 925-26 (finding prejudice where the defendants waited eleven months to seek arbitration, participated in numerous pretrial proceedings, filed motions challenging the merits of the plaintiffs’ claims, and took depositions).

. The majority claims that, had the Defendants moved to enforce the arbitration clauses in 2009, “they would have been ... forced into class arbitration with near certainty.” Majority Op. 298. I disagree. The majority bases that view on the flawed premise that these arbitration clauses implicated Muhammad. There simply is no class arbitration bar that would have been held unconscionable, and the clauses at issue could have been interpreted either way.

. The majority itself quotes this language from Fisher, see Majority Op. 297, but then analyzes the futility issue here in a manner totally divorced from the actual language of the arbitration clauses.